HIBERNIA INS. CO. *v.* ST. LOUIS & NEW ORLEANS TRANSP. CO.*

*(Circuit Court, E. D. Missouri.  March 9, 1882.)*

1. CORPORATIONS—FRAUDULENT ASSIGNMENT OF ASSETS—SUBROGATION—PLEAD-
INGS—PARTIES.

Where A., an insurance company, brought its bill in equity against B., C.,
and D., and alleged that B. was a transportation company, and had, by differ-
ent contracts of affreightment with different shippers, undertaken to transport
certain merchandise, insured by A., to a specified point; that said merchandise
was shipped at different times on different barges; that the same was damaged
or lost through B.'s negligence under different circumstances; that A., as
insurer, paid the amount of the respective losses, and became subrogated to
the rights of the shippers against B.; that after said cause of action accrued
B., fraudulently and without consideration, transferred to C., another corpo-
ration, all its assets, and that C. took the same with notice of A.'s demand;
and that D. was the president of and principal stockholder in, and caused said
transfer to be made; and where the prayer of the bill was for a decree as for a
moneyed judgment against the defendants; also to charge the property trans-
ferred, as aforesaid, with a lien in A.'s favor thereon,—*held,* (1) that D. was not
a proper party; (2) that the bill was not multifarious; (3) that the allegations
of the bill were sufficient to hold B. and C. to answer; and (4) that under the
facts stated, C. was answerable to A. to the extent of the property received by
it from B.

## Demurrer to the Bill.

The defendants demurred to the bill in this case upon the follow-
ing grounds, viz.:

(1) Because it contains no matter of equity whereon this court can ground
any decree or give complainant any relief as against defendants.  (2) Be-
cause said bill does not show any privity between the plaintiff and defendants
which would entitle it to call upon these defendants to account to it in this
court.  (3) Because said bill of complainant is multifarious, in that it unites
in the same bill several matters and causes in which none of these defendants
have any united or common interest, and in which no two of said defendants
have any interest.  (4) Because, on the face of said bill, it is apparent that
this complainant has no right to institute this suit in this court, or to ask the
relief requested.

The averments of the bill are sufficiently set forth in the opinion
of the court.  The parties defendant are the St. Louis & New Orleans
Transportation Company, the Babbage Transportation Company, and
Samuel Lowery.

*O. B. Sansum* and *George H. Shields,* for plaintiff.

*Given Campbell* and *Thomas J. Portis,* for defendants.

*Reported by B. F. Rex, Esq., of the St. Louis bar.

TREAT, D. J. The Babbage Transportation Company, by different contracts of affreightment with different shippers, undertook to transport to New Orleans certain merchandise specified. Said merchandise was shipped at different times on different barges, which were towed by different steamers. It is averred that the same, respectively, was damaged or lost through the negligence of said transportation company, under entirely different circumstances. There is no averment that judgment *in rem* or *in personam* was ever in admiralty or at common law had, but that the plaintiff, as insurer, paid the amount of the respective losses, and, being thereby subrogated to the rights of the respective shippers, can maintain the cause in equity before recovery had on the original demands. The bill avers that, after said cause of action accrued against the Babbage Transportation Company, said company transferred fraudulently to the other defendant company all of its boats, barges, etc., and that Lowery, being president and principal stockholder, caused said transfer to be made. The prayer of the bill is for a decree as for a moneyed judgment against the defendants, also to charge the property transferred as aforesaid with a lien in plaintiff's favor therefor, and for an injunction *pendente lite* against the further sale or transfer of said property.

It is obvious that if this mode of proceeding can be upheld the court will have primarily to ascertain whether the Babbage Company, as owner of the respective barges or steamers, was liable for the alleged losses. In admiralty, if a loss occurred as charged, the shippers had their appropriate remedy *in rem* or *in personam*, with a resultant lien *in rem* on the barges and steamers involved, or, at common law, actions on the different contracts of affreightment. The rights of the shippers would pass to the insurers by subrogation. No such legal proceedings, however, have been had. The plaintiff is merely a creditor at large as to two separate demands, requiring distinct trials. Of course, two such demands could not be united in an action *in rem* in admiralty, because the transactions and the vessels were different. Whether they could be united *in personam* it is not necessary to discuss, but in equity such joinders are frequent. The right to join the two demands must rest, then, upon the allegations as to the fraudulent transfers, the same having been made with knowledge of the plaintiff's claims, and impliedly to defeat the same.

By what rule was that property or the vendee thereof charged with the unascertained obligations of the vendor? It must be, if at all,

because said transfer was a mere fraudulent scheme to deprive the plaintiff of his rights against said property. But he had no distinctive right against any other than the guilty *res* respectively; certainly no lien upon *all* the property of the owners prior to a judgment *in personam* in admiralty, or upon execution levied subsequent to judgment at common law. It is true that under exceptional circumstances courts of equity have lent their aid to creditors at large, and generally when the property sought to be charged was already in the custody of the court by force of a trust, receivership, etc.

The case of *Garrison* v. *Memphis Ins. Co.* 19 How. 312, can hardly be considered as fully sustaining the plaintiff's proposition, although, from the imperfect statement of that case, it would seem to be held that because an insurer is in equity subrogated to the rights of the insured, he may before judgment at law proceed to enforce his demand against the owners of a vessel. The cases cited in that opinion do not go to the length here claimed; for the court only insists upon the rule whereby the insurer, subrogated to the rights of the insured, may enforce the lien on a judgment recovered by the insured, and "may apply to equity whenever an impediment exists to the exercise of his legal remedy in the name of the assured." To those familiar with the common-law practice then prevailing to a large extent, the true meaning of that expression by the court is clear. In that case there were 11 contracts of affreightment dependent on the construction each was to receive—the disaster being one and the same—and, to avoid multiplicity of suits, embraced in one bill.

In *Case* v. *Beauregard*, 99 U. S. 119; S. C. 101 U. S. 688, a fuller exposition of equitable principles is given. The same case was twice before the United States supreme court, substantially, and the views expressed in 101 U. S. 688, are especially instructive. The first bill was dismissed because, as the court says, "it was not averred that judgment at law had ever been recovered against the partnership for the debt, and that an execution had been issued thereon and returned fruitless." It then proceeds to state under what circumstances a creditor may, without judgment and execution previously had, pursue his demand in equity. Taking the most liberal of the rules stated in that case, as exceptions to the general proposition, the case before the court will not fall strictly within any of them; for each must be considered in the light of the equitable circumstances upon which it depends.

It must be admitted that some of the views expressed in that opinion go very far towards sustaining the plaintiff's proposition, yet cannot be held to go expressly to the extent here claimed, as covering claims at large not dependent on the same testimony or transactions. The plaintiff's demands by subrogation are for two distinct causes of action against the Babbage Transportation Company. It is charged that Lowery was president and principal stockholder of said company. As such officer and stockholder no cause of action existed against him personally. Why, then, should he be made a party defendant to this suit? It is said that by force of the Missouri statute he could in given contingencies be compelled to respond, to a certain extent at least, to the demands against the corporation. But is this a proceeding to enforce a supposed liability against him as a stockholder? and, if so, why is not the same done pursuant to the Missouri statute, so that he may be compelled to respond individually to plaintiff's demand? But the bill is based on another theory to which he is not a necessary or proper party; otherwise a decree would have to be rendered against him individually. He is not charged with insolvency; nor are any of the facts averred whereby he would become personally liable for the debts of the Babbage Transportation Company. If he were, the proceedings at law against him would be full and adequate under the Missouri statute. The extended theory of the bill is that there are outstanding demands against the Babbage Transportation Company not reduced to judgment nor supported by a lien; that in that condition of affairs that company transferred all its property without consideration, and therefore fraudulently, as against existing creditors, to the other corporation, with full knowledge on the part of the latter that there were such outstanding demands; that the only means of enforcing those demands is to compel the latter company to hold the property thus received by it subject to such demands when established. The peculiarities of the law concerning the formation and dissolution of corporations under the Missouri statutes provoked a sharp comment from Justice Miller a few years ago, so far as they were designed to affect proceedings in admiralty. His remarks might have been properly extended to other proceedings. The case before the court is illustrative. A corporation having incurred liabilities, is dissolved, practically, by transferring all its property to another corporation, formed possibly for the very purpose of leaving the creditors of the former (creditors at large) without any adequate means of realizing their just dues. There is too much of this,

as judicial experience has shown. The change of organization is too often a mere change of name, designed solely to defeat the rights of creditors. The corporation has one name to-day, and to escape its liabilities goes through the form of a new organization and takes a new corporate name, with a transfer of all the assets of the old corporation. Should that contrivance succeed? Should not a court of equity hold the new answerable for the old to the extent of assets received? Such is the purpose of this bill. Mr. Lowery is an unnecessary party, but the allegations are sufficient to hold both of the corporations to answer. If the new corporation knew, as charged, that the demands against the old were outstanding, and with that knowledge received all the property of the old corporation without consideration, why should it not be held to have acquired that property *cum onere?* Will not a court of equity cut through such formal contrivances, so as to prevent the success of a scheme which operates a fraud, whether so intended or not? Such seems to be the scope of the decisions by the United States supreme court.

There may be many difficulties connected with the transfer of personal property, if such a view is to obtain, which difficulties, however, do not arise in this case. Here it is charged that the new corporation took all the property of the old without consideration, charged with full notice of plaintiff's demands, and therefore, as to this plaintiff, fraudulently. It may be that serious embarrassments will ensue, pending the litigation, if the *lis pendens* is to hang over the new corporation concerning its rights in the transferred property. Of course, it is answerable to plaintiff's demands only to the extent of the property received; and if any serious detriment as to the use or disposal of the same should arise, the court is open for such orders as may preserve the rights of the parties pending the litigation.

The attention of the court has been called to the Missouri statute, whose terms and procedure, it is considered, are inapplicable to the matters under consideration. The averments of the bill are sufficient, so far as the two corporations are concerned, but not sufficient as to Lowery. If any cause of action against him, personally, should arise, either through his connection with the respective corporations or otherwise, the plaintiff can then pursue whatever course at law or in equity may be proper; but such possibilities cannot justify the plaintiff in making him, or any other stockholder, a party defendant to the present proceeding.

The court decides that said Lowery is improperly joined as a defendant; and the demurrer will, to that extent, be sustained, and

overruled in all other respects. The plaintiff can dismiss as to Lowery; and, on doing so, the remaining defendants will have leave to answer within 15 days.

The doctrine as to multifariousness in this class of cases is well considered in *Hayes* v. *Dayton*, 18 Blatchf. 420.