HIBERNIA INS. CO. *v.* ST. LOUIS & NEW ORLEANS TRANSPORTATION Co. and others.[1]

*(Circuit Court, E. D. Missouri. July 3, 1883.)*

1. COMMON CARRIER—BILL OF LADING—EXCEPTED PERILS—"DANGERS OF THE RIVER."

The phrase "dangers of the river," as used in bills of lading, includes dangers arising from unknown reefs which have suddenly formed in the channel, and are not discoverable by care and skill.

2. TOWAGE CONTRACT—EXCEPTED PERILS.

Where the owner of a tow-boat agrees to tow a barge containing a cargo from St. Louis to New Orleans, and to deliver the barge and cargo to a consignee at the latter place, "the dangers of navigation and other known or unknown obstacles excepted," and said tow-boat ran said barge against a tree, which had recently fallen into the channel, and was entirely submerged and hidden from view, and the presence of which in the channel was unknown, and not discoverable by care and skill on the pilot's part, and said barge and cargo were greatly damaged, *held*, that the accident arose from an excepted peril, and that the owner of the tow-boat was not liable.

In Equity.

The Babbage Transportation Company, a corporation doing business as common carrier on the Mississippi, and also engaged in towing barges for hire, contracted to transport a large amount of wheat, insured by plaintiff, from St. Louis to New Orleans,—"the dangers of the river, fire, and collision excepted." The wheat was loaded for transportation upon said company's barge, the Sallie Pearce. The Babbage Transportation Company also contracted to tow the barge Colossal and cargo from St. Louis to New Orleans, and deliver them to a consignee at the latter place,—"the dangers of navigation and the dangers of * * * collision, * * * and other known or unknown obstacles, excepted." Said barge and cargo were also insured by plaintiff. The steamer Means, belonging to said company, took the Sallie Pearce and several other barges in tow and proceeded down the

[1] Reported by B. F. Rex, Esq., of the St. Louis bar.

river, but before reaching her destination she ran, together with her two starboard barges, upon a hidden reef or lump of sand in the channel with such force as to cause them to stick fast. The sudden checking of the steamer caused the lines of the starboard barges to part, and caused the Sallie Pearce to break away from the steamer, though fastened in the proper manner and with lines of usual strength. After breaking away the barge was carried by the rapid current violently against the guards of a steam-boat laid up at the Missouri shore, a short distance below the reef, and her cargo box was broken in and a large part of her cargo lost. Evidence was introduced by defendants, at the trial, tending to prove that the reef upon which the Means struck was in the channel; that it had been formed suddenly; that the pilot had no reason to suppose it was there; and that the boat was being handled with care and skill when the accident occurred.

The Colossal appears to have been unseaworthy at the time she started. She was taken in tow by a steamer belonging to the Babbage Transportation Company, which started down the river with her and some other barges, but on her way down, as she was nearing the mouth of the St. Francis river, and while said steamer and barges were in a very narrow channel, not over 100 yards wide, and while floating and flanking down through said channel in the safest and most prudent manner, the steamer and her tow occupying the width of the channel, the pilot saw that there was an unusual current setting in towards the Missouri shore just at the mouth of said St. Francis river, and that he would run very near the shore unless he backed said boat, and he immediately backed said boat, and would have passed in safety through this narrow place, but just below the mouth of said river the bank had shortly before caved in, of which no one coming down the river could have had any knowledge, and a large tree upon the land had fallen into the river, and, in passing, the stem of said barge Colossal struck the tree, which was hidden in the water from view of the pilot, and which by no act of his, or prudence or precaution on the part of the steamer, or those in charge of her, could have been avoided, and the Colossal was broken loose from the tow-boat and floated down about a mile before said boat could overtake her and make her fast again, and when said barge was reached she had been so much damaged and injured by her stroke against said tree, in her weak and unseaworthy condition, that she was almost full of water, and it was impossible to pump her out or do more than land her and make her fast to shore, which was done without loss of time, and all of her cargo saved that could be saved, but a large portion of it was unavoidably damaged and rendered worthless. Plaintiff paid the losses and became subrogated to the owners' rights against said transportation company.

Said company has since been absorbed by the St. Louis & New Orleans Transportation Company, which has succeeded to its liabilities.

*O. B. Sansum* and *George H. Shields*, for plaintiff.

*Given Campbell* and *Thomas J. Portis*, for defendant.

TREAT, J. As to the structure of the bill and the principles involved, the views of this court were heretofore expressed;[1] following *Case* v. *Beauregard*, 99 U. S. 119, and S. C. 101 U. S. 688. As to the shipment on the Sallie Pearce, the contract was that of a common carrier. As to the Colossal there has been some testimony offered in order to determine whether the contract was simply that of towage or that of a common carrier. The court holds that it was simply a towage contract, which is apparent, not only from the face of the written contracts themselves, but also from the facts as developed that said barge and cargo belonged to the shipper. Whether this be so or not is of no moment, in the view the court takes of the case. There were two accidents; one as to the Sallie Pearce, and the other as to the Colossal. As usual in such cases there is a great conflict of testimony. Hence, the court has sought to reach a correct conclusion by examining the physical facts and circumstances connected with each disaster. The conclusion reached is that each disaster was caused by an inevitable accident, falling within the excepted perils of the river.

The bill will be dismissed, with costs.

---

[1] See 10 FED. REP. 596, and 13 FED. REP. 516.