## BLAIR *v.* ST. LOUIS, H. & K. R. Co. and others.[1]

*(Circuit Court, E. D. Missouri.* October 20, 1884.)

1. CORPORATIONS—FRAUDULENT CONVEYANCES.

A transfer of all the assets of one corporation to another, whereby, through a mere change of name, an attempt is made to defraud creditors, or which would operate a fraud, will not be upheld as against creditors, and the transferee, if he takes with notice, takes *cum onere.*

2. SAME.—MORTGAGE—PRIORITY.

If, in such a case, the transferee mortgages its property to secure the payment of bonds, the lien of creditors of the old corporation upon the property transferred will be prior in right to that of bondholders with notice.

3. SAME—ULTRA VIRES.

Where a railroad company was created by a special act of the general assembly of Missouri, which contained minute provisions as to the rights of stockholders and as to their duties to each other, the public, and the state, to which last annual reports were to be made, and which provided that the construction of the road was to be begun within 10 years and completed within 20, and that a fair record of the whole expense of construction should be kept, and reserved to the state the privilege of purchasing the road after the expiration of 50 years, *held,* that the corporation had no authority to transfer all its assets to another corporation.

Demurrer to Answer and Cross-bill.

The St. Louis & Keokuk Railroad Company being largely indebted, the stockholders and officers of the company organized the St. Louis, Hannibal & Keokuk Railroad Company, to which they transferred the assets of the St. Louis & Keokuk Railroad Company, in consideration of stock in the new company. The other material facts are stated in the opinion of the court.

*Walter C. Larned* and *Theodore G. Case,* for complainant.

*Geo. D. Reynolds* and *Jas. Carr,* for defendant.

TREAT, J. As the allegations are necessarily taken as true on the demurrers submitted, the question may be briefly stated: A former railroad corporation, being largely indebted, transferred to another corporation all of its assets. The latter corporation proceeded with the contemplated and unfinished work, taking possession of all the railroad bed, etc., of the prior corporation, with *notice* of the respondent's demand, not then reduced to judgment. It subsequently issued a mortgage to secure its bonds, and the plaintiff filed his bill to foreclose the same, with an intervening receiver, duly appointed. The bill makes the respondent a defendant, and he has answered, setting up his demand, now reduced to judgment, and by a cross-bill, praying for a decree establishing his demand as a lien prior in right to the mortgagee, as against so much of the property of the old corporation as is included in the mortgage by the new corporation, etc.; that a transfer of the assets of one corporation to another, whereby, through a mere change of name, an attempt is made to defraud creditors, or which would operate a fraud, cannot be upheld against

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

said creditors, and a transfer disabling it from its corporate duties is practically such a fraud, making transferee with notice a trustee, taking *cum onere*. That doctrine is plain, where no intervening rights are presented. The respondent's claim in this case was at the time of the transfer a demand at large, and whether to be ultimately established, undetermined. Subsequently, by the judgment and decree of this court, said demand was established against both the old and new corporations; but it was not then adjudged to be a lien demand, specifically or generally. The point of the present demurrers or "exceptions" is to have the decision of this court as to the relative rights of the respondent and of the bondholders under the mortgage. Had no mortgage interests intervened, the court would, in accordance with decisions heretofore rendered, charge the property transferred to the new corporation with the obligations of the old. After the new had received the assets of the old, could it, by mortgaging the same, rescue them from the *quasi* trust under which they rested, by the interposition of mortgages or otherwise?

It is averred that the mortgagee had *notice* of the existence of the respondent's demand when the mortgage was accepted, although said demand was not reduced to judgment and a decree thereon had. The case is somewhat anomalous. Under the statute of Missouri, corporations are readily formed, and, as heretofore stated, often formed for the mere purpose of enabling an old corporation or private parties to escape liabilities, and at the same time transfer all assets to a new corporation; thus practically, by a mere change of name, defeat creditors and violate obligations. Courts cut through all such contrivances when designed to defeat honest claims, or when they practically look to that end, especially where the stockholders and officers are substantially the same. It has been heretofore held in this case that the new corporation was charged with respondent's demand. Are the subsequent bondholders, pending the judicial determination of plaintiff's rights, bound by the outcome? It is averred that they had *notice* thereof. If that be true, as is confessed, then they took their bonds subject to respondent's rights, and it may be irrespective of notice under the facts charged. In the answer and cross-bill there are allegations that the amount of unpaid stock would be sufficient, if exacted, to meet all demands, the theory being that the mortgagee and receiver should exhaust the remedies against delinquent stockholders before enforcing the mortgage. That proposition is untenable. The mortgage covers the property named therein, on which, for security, the mortgagee relies, but it does not convey any right for delinquent stock. His demand is solely against the property specifically mortgaged. Hence, so much of the answer and cross-bill as pertains to delinquent stock is irrelevant to the present issue. The respondent may resort thereto, if needed, as a judgment creditor, with which controversy the plaintiff in this suit has nothing to do.

Eliminating all extraneous issues, the single inquiry is as to the respective rights of the parties contestant, under the facts stated. The question is not devoid of embarrassment. The old corporation transferred to the new all its assets in an uncompleted enterprise, disabling itself from performing its corporate duties. By the facilities granted by the state law concerning corporations, the new corporation, taking all of said assets, proceeded to finish a road which the old corporation had commenced and was bound to construct under the terms of its charter, including many express provisions for the state's benefit. In the absence of a lien fastened on specific property a purchaser or mortgagee would ordinarily take the same irrespective of any demands at large against the vendor or mortgagor. If there were nothing further in this case, the conclusion would be easy. The court, however, is confronted with the fact that there was in this case, to a large extent, a mere formal change of corporate names, under circumstances, as heretofore decided, which made the new corporation responsible for respondent's claim which has passed into judgment. The old corporation had its duties to perform, of a public as well as private character, from which it could not discharge itself by a simple transfer of name or property. The new corporation, in taking said property, could not escape its consequent liabilities by any subsequent mortgage. The express assumption of respondent's demand by defendant may admit of question, inasmuch as the terms of the conveyance are that the new corporation assumed "all the debts, liabilities, and obligations theretofore made or incurred by or legally imposed on the said St. Louis & Keokuk Railroad Company, for right of way, station grounds, ties, or bridging, and other good and valuable considerations in said conveyance mentioned." Was not, however, the respondent's demand, now judicially ascertained, one of the obligations assumed? Such seems to be a fair construction of the terms of said conveyance; but, if not so, the general principle must control, viz., that a grantee of corporate assets, as in this case, takes *cum onere;* that it must, under the facts disclosed, be treated as the successor of the prior corporation, charged with a trust as to assets received. It is charged that the bondholders or mortgagee *knew* of the respondent's demand, which is an equitable lien, and prior in right. If they had notice thereof they must take subordinate thereto.

The doctrines laid down in the following cases establish respondent's claim to priority against the specific property transferred: *Thomas* v. *Railroad Co.* 101 U. S. 82; *Hibernia Ins. Co.* v. *St. Louis & N. O. Transp. Co.* 13 FED. REP. 516; *Harrison* v. *Union Pacific Ry. Co.* 13 FED. REP. 522; *Cass* v. *Manchester Co.* 9 FED. REP. 640; *Brum* v. *Merchants' Co.* 16 FED. REP. 140; *Abbot* v. *American Co.* 33 Barb. 578. There is also another and controlling proposition. The old corporation was created by special act of the general assembly in 1857. Its provisions were minute and specific in many essential

details, not only as to obligations and rights of stockholders, but as to their duties, respectively, to each other and to the public, particularly to the state, to which annual reports were to be made, etc. The construction of the road was to be commenced within 10 years and completed within 20 years thereafter; a fair record of the whole expense of constructing the road to be kept, with the privilege reserved to the state to purchase the same, at rates named, at the expiration of 50 years. It is clear that the action of the corporation in transferring all its property thus formed was beyond its corporate authority, and evasive of its chartered obligations. The conclusive effect of what was done was to fasten a lien on the assets transferred prior in right to the mortgages.

The demurrers are overruled.