FARMERS' FIRE INSURANCE CO. *v.* JOHNSTON.

1. EQUITY—COLLECTION OF JUDGMENT—INJUNCTION—RES JUDICATA.

An insurance company which has unsuccessfully defended an action upon a policy, payable to a mortgagee as his interest may appear, upon the ground of misrepresentation with reference to the ownership of the mortgage, cannot have the question retried in equity upon a bill to enjoin the collection of the judgment.

2. SAME—PLEADINGS—AMENDMENT.

The fact that the company was not allowed in the action at law to put in all of its proof, because of the condition of its pleadings, cannot be urged in support of the equitable remedy, where it does not appear that it asked leave to amend its pleadings so as to render such proof admissible.

3. COSTS ON APPEAL—SOLICITOR'S FEE—SEVERAL DEFENDANTS.

Upon affirmance in the Supreme Court of a decree dismissing a bill to enjoin the collection of a judgment, the defendants in which represented different interests, costs, including separate solicitor's fees, were awarded to each against the surety on the appeal bond as well as against the complainant.

Appeal from Wayne; Carpenter, J. Submitted June 8, 1897. Decided June 28, 1897.

Bill by the Farmers' Fire Insurance Company against Cyrus Johnston and others to enjoin the collection of a judgment upon a policy of insurance. From a decree dismissing the bill on demurrer, complainant appeals. Affirmed.

*E. T. Wood* and *Willis G. Clarke*, for complainant.

*S. E. Engle*, for defendants Johnston and Dehn.

*William Stacey*, for defendants Cartwright.

MOORE, J. Complainant commenced this proceeding by filing a bill in chancery. Defendants demurred to the bill, Judge Carpenter sustained the demurrer, and complainant appeals. In disposing of the demurrer, Judge Carpenter made a statement of the questions involved in this proceeding:

"Complainant insured defendants Cartwright Bros. against loss by fire on a stock of goods, with loss payable to defendant Johnston as his mortgage interest might appear. This stock of ·drugs burned. Johnston, as assignee of the Cartwrights, brought suit against complainant and recovered judgment. The Supreme Court affirmed that judgment. 106 Mich. 96. Subsequently Johnston and the Cartwrights differed as to their respective interests in the judgment, and the Cartwrights commenced a suit on the equity side of this court against Johnston and complainant to determine their differences, and to compel complainant to pay according to that determination. Complainant thereupon filed an answer, claiming the benefit of a cross-bill, praying that the judgment against it be declared void. The other parties to this suit demurred to that bill. The demurrer was sustained both in this court and the Supreme Court. 110 Mich. 312. The Supreme Court decided that a decree made before complainant had appeared, adjudging to defendants Cartwright $424.23, and to defendant Johnston the balance of said judgment, operated as a discontinuance, and that complainant was left to pursue such remedy as it deemed advisable by independent suit.

"Complainant thereupon commenced this suit, charging that, about two weeks before the insurance in question was effected, defendant William A. Dehn sold to said

Cartwright Bros. the stock subsequently insured; that said Dehn deceived them as to its value; that the property was not worth over $500, while the Cartwrights paid $500 in cash, and gave Dehn their note for $1,500, and secured its payment by a chattel mortgage on the property; that the title to this note and the beneficial interest therein always remained in said Dehn; that this fact was well known to Johnston, and both of the Cartwrights knew that said note and mortgage had been given to Dehn; that, when the insurance was applied for, defendants Johnston and John O. Cartwright stated to the complainant that the title to said note and mortgage was in defendant Johnston, and no mention whatever was made of defendant Dehn's name; that defendant Dehn had not a good reputation, and, if his connection with the property had been known, complainant would not have insured the property; that the true ownership of said note and mortgage was known only to defendants Johnston and Dehn and their counsel, and was not discovered by complainant until the suit in chancery heretofore referred to was commenced by the Cartwrights against Johnston and the insurance company. All matters appearing of record in the two former suits are made a part of the bill.

"The bill prays for a decree subrogating complainant to all the rights of the Cartwrights against Johnston and Dehn, and adjudging the note, chattel mortgage, and insurance policy and judgment void. Defendants demur, and the question is whether the case made by the bill entitles complainant to relief. It is claimed that the insurance policy and judgment are void because Dehn held the note and mortgage when the insurance was effected; that the note and mortgage are void because of the fraud practiced by Dehn on the Cartwrights. We will consider separately:

"1. Can the judgment be avoided because the title to the note and mortgage was in Dehn? In my opinion filed March 17, 1896, in the suit of *Cartwright* v. *Johnston*, I stated my reasons for the conclusion that the policy was not void if the Cartwrights named the one whom they believed owned the mortgage on their property. I still adhere to that opinion. It is not averred in this bill that the Cartwrights did not believe that Johnston owned the mortgage. On the contrary, it is therein distinctly averred that, so far as this complainant could learn, the true ownership of said note and chattel mortgage was known only to said Cyrus Johnston and to said William Dehn

and their counsel. If it be argued that the Cartwrights failed in their duty, in not informing complainant that the note and mortgage had been given to Dehn, or that the circumstances indicate that they believed Dehn the owner when this insurance was effected, it is a sufficient answer to say that all these facts upon which either of these claims can be based appeared on the trial of the law-suit on the insurance policy, and an opportunity was thereby afforded to use them as a defense.

"2. Can the note and mortgage be set aside, or the amount evidenced thereby reduced, because Dehn deceived the Cartwrights as to the value of the insured property? It is alleged that, two weeks before the insurance was effected, Dehn sold the property to the Cartwrights for $2,000, when it was worth but $500. The Cartwrights do not complain of this fraud. It is claimed, however, that complainant should be subrogated to the rights of the Cartwrights, and be permitted to complain of it. In an opinion filed April 9, 1896, in *Cartwright* v. *Johnston,* I stated that the Cartwrights had elected to affirm their contract, and, if complainant were subrogated to their rights, it would be bound by this election. The principle announced in that, whether or not it was abstractly correct, was not decisive of the case. It assumed that, if the Cartwrights had waived their right to rescind, they had no remedy for the fraud. Clearly, they would still have the right to recover in an action on the case the amount they were damaged by the fraud. We are bound, then, to consider the question, Can complainant be subrogated to the Cartwrights' right to complain of Dehn's fraud? The right of subrogation is given in order that a loss may be transferred to the party whom equity deems primarily liable. In no sense is Dehn primarily liable for the loss sustained by complainant. The representations of Dehn to the Cartwrights had no effect on any of complainant's rights. Those representations had nothing to do with the contract of insurance. The only representations of value of which complainant can complain are those upon which it effected the insurance, and in the suit at law, when these representations were investigated, it was judicially determined that the property was worth $2,000. The authorities holding that an insurance company may be subrogated, in case of loss of the insured property, to the insured's right of action against the person whose misconduct or negligence caused the loss, are clearly inapplicable.

"My opinion that the right of subrogation does not ex-

ist in this case is very much strengthened by the fact that the able and industrious counsel of complainant fail, in my judgment, to find any authority supporting their position. Of the cases they cite, *Hibernia Ins. Co.* v. *St. Louis, etc., Transp. Co.*, 10 Fed. 596, 13 Fed. 516, and 17 Fed. 478, is nearest in point. Respecting that case, I quote from the brief of complainant's counsel the following clear and concise statement: 'In this case it was held that an insurance company, upon payment of insurance, might be subrogated to the rights of the insured against a transportation company for negligence, and might, before recovering judgment on the claim for negligence, file a bill against the transportation company to set aside a transfer of its property for fraud. The fraud consisted in this: The transportation company, against which the insurance company's claim existed, reorganized under another name, with substantially the same parties in interest as stockholders. The old company transferred all its property to the new, with intent to defeat the claim of the insurance company.' That case is clearly distinguishable from this. There the fraud attacked was fraud towards complainant,—not, as in this case, as already shown, fraud towards a third person. The right to complain of Dehn's fraud was the personal right of the Cartwrights, which they could not assign (*Smith* v. *Thompson*, 94 Mich. 385), and which, in my judgment, equity would not assign for them.

"I do not think the bill makes a case, and the demurrer must be sustained."

Many of the questions involved in this litigation have been in this court twice before. *Johnston* v. *Insurance Co.*, 106 Mich. 96; *Cartwright* v. *Johnston*, 110 Mich. 312. The complainant's bill makes the records in these cases part thereof, so that it becomes necessary, in disposing of this proceeding, to take notice of what was done in those cases. In the law case the question was left to the jury to determine the value of the property which was insured, and they found it to be worth at least $2,000. An inspection of the law record also shows that it was then the claim of counsel for the insurance company that the chattel-mortgage interest of $1,500 was in Dehn, and not in Johnston, and for that reason Johnston could not

recover.   The counsel for the insurance company prepared a request to charge which reads as follows:

"The evidence discloses that W. A. Dehn has a chattel-mortgage interest of $1,500 in the insured property, which was represented by the insured to belong to Cyrus Johnston, which is a misrepresentation, within lines 7 and 8 of the policy, and is in violation of the provisions of line 18 of the policy, and therefore avoids the policy, and the verdict of the jury should be for the defendant."

Another request reads as follows:

"The declaration avers a chattel-mortgage interest of $1,500 in C. Johnston.   The evidence discloses a chattel-mortgage interest of $1,500 in W. A. Dehn, which is a variance.   Therefore the verdict of the jury should be for the defendant."

This would indicate that, as early as during the trial of the law case, the defendant company had knowledge that Dehn claimed an interest in the chattel mortgage, and that the defendant company sought to defeat Johnston's recovery for that reason.   The company, through its attorneys, now says that it did not, at the time of the law trial, suspect Dehn's interest; that the testimony left the chattel mortgage in Dehn, but the insurance company never deemed it true, but sought to take advantage of it to compel the putting of these very men on the stand.   They also say that it was not their claim that the showing that the title to the chattel mortgage was in Dehn was a fraud upon the company, but simply that it was a variance between the pleadings and proofs.   We do not think a reading of the requests prepared by counsel will sustain any such contention.   It was the claim of the defendant that a misrepresentation had been practiced upon the company, in relation to this chattel mortgage, sufficient to avoid the policy; so that we think the question of fraud was raised as early as the trial of the law case, which case was tried in November, 1894.   It is certain that evidence appeared in that contention to put defendant upon inquiry, and that, having raised the question at that time, it was bound to go into it fully.

In *Gray* v. *Barton*, 62 Mich. 196, it is said:

"Equity will not relieve a party against a judgment at law, on the ground of its being contrary to justice, unless the defendant was ignorant of his defense pending the suit, or facts could not be received as a defense at law, or unless, without any neglect or default on his part, he was prevented by fraud or accident, or the act of the opposite party, from availing himself of his defense."

It is urged by complainant that it was not allowed by the judge, in the suit at law, to put in all its proof, upon the ground that its pleadings were not in condition to permit it to do so. There is nothing in the record to indicate that it asked to amend its pleadings so that it might put in such testimony as it had at hand, nor does the record disclose that it used such diligence as it ought after the knowledge came to it that Dehn claimed an interest in the chattel mortgage.

We do not think a mere allegation by the complainant that a fraud has been committed, and that it can now establish the fraud upon a retrial, when it appears from the record that the question of the same fraud was raised in the former trial, will authorize a court of equity to interfere, after the judgment against the complainant in the court of law has been affirmed by the highest tribunal. To do so would open the way for another contest in equity of nearly every suit at law where the defeated party insists that his defeat was brought about by improper methods. In *Miller* v. *Morse*, 23 Mich. 368, it is said:

"Generally courts of equity do not permit cases to be retried therein which have already been disposed of in the courts of law upon the very point made by the bill. To do so would be to assume an appellate jurisdiction, which by the law is not conferred upon them. *Simpson* v. *Hart*, 1 Johns. Ch. 95. The jurisdiction to grant new trials is exercised only when the judgment recovered is against conscience, and when the applicant had no opportunity to make defense, or was prevented by accident from so doing, or by the fraud or improper conduct of the opposite party, and without fault on his own part."

We do not think the case stated by the bill, construed in connection with the records in the two cases which have been here before, which are made a part of said bill, calls for any interference by the court of equity.

The interests of Cartwright and Cartwright, who appear by one solicitor, and Dehn and Johnston, who appear by another solicitor, are not identical, and they will be decreed costs of both courts; each of said solicitors for said defendants to have a solicitor's fee. Costs are awarded against the surety on the appeal bond as well as against the complainant.

The decree is affirmed.

LONG, C. J., GRANT and MONTGOMERY, JJ., concurred. HOOKER, J., did not sit.