BECKER *v.* WELCH.

1. EQUITY—JURISDICTION—RELIEF FROM JUDGMENTS AT LAW.
   A court of equity in proper cases may afford relief from judgments at law, where the facts are such as to invoke its jurisdiction.

2. SAME—FALSE TESTIMONY IN SUIT AT LAW—INSUFFICIENT TO INVOKE JURISDICTION.
   A court of equity may not, in the exercise of its jurisdiction, entertain a bill to set aside a judgment at law on the ground that false testimony was given upon the trial of the issue on the law side of the court.

3. SAME—UNFAMILIARITY WITH PRACTICE.
   That plaintiff was not familiar with the practice in this State, although he had reputable attorneys employed who were, is not so extraordinary as to invoke equity jurisdiction.

Appeal from Genesee; Brennan, J. Submitted June 5, 1919. (Docket No. 51.) Decided July 17, 1919.

Bill by Christian Becker against James A. Welch to set aside a judgment and settlement on the ground of fraud. From an order granting a motion to dismiss the bill, plaintiff appeals. Affirmed.

*L. B. Gardner* and *O. J. Hood,* for plaintiff.
*Farley & Selby,* for defendant.

FELLOWS, J. The bill of complaint with accompanying exhibits covers 68 pages of this record, the amendments to it several additional pages. It is obvious that we cannot in this opinion set out in detail its allegations and it will be sufficient that we state the controlling facts alleged and the claims made. By this bill and the amendments the following facts are made to appear:

Plaintiff lives near Pontiac in the State of Illinois, defendant at Flint in this State. In the spring of 1917 defendant was the owner of 240 acres of farm land situated in the county of Genesee in this State and listed it for sale with the firm of Hoke & Smith, real estate dealers at Pontiac, Illinois. As a result of negotiations defendant's farm was sold to plaintiff and a deed executed. Part of the consideration was paid in cash, part by the assumption of a mortgage, and $2,500 by the delivery of two stallions, Mr. Becker being a dealer in blooded stallions. After title to the stallions had been transferred to Mr. Welch, one of the stallions died and the other was shipped to him at Flint. It is alleged that there were no representations or warranties as to these stallions. August 1, 1917, the defendant, Mr. Welch, commenced suit by attachment in the circuit court for the county of Genesee against Mr. Becker. In his affidavit for such writ he alleged that there was due him $1,490 on implied contract. There was no personal service, but publication was had. In his declaration he alleged the sale of the stallions to him on March 29th, and alleged a warranty as to their soundness and its breach. February 4, 1918, judgment was rendered in such attachment case for $1,490. It is alleged that in that case Mr. Welch falsely testified to a warranty and its breach. On January 25, 1918, garnishment proceedings were instituted against John Curry, who disclosed $1,010.85 in his hands belonging to Becker. March 16th judgment was entered against the garnishee defendant for the amount disclosed to be in his hands. On February 20th Neithercut & Neithercut, a firm of attorneys located at Flint, having been previously employed by Becker, entered a special appearance in the attachment case and moved its dismissal. March 2d the motion was denied and at this time Mr. Welch's attorney offered to consent to the vacation of the judgment

and to permit Becker to come in and defend. About the middle of March, Becker employed Elmer Smith of the firm of Hoke & Smith, of Pontiac, Illinois, to come to Flint to negotiate with Mr. Welch for a settlement. During their negotiations Welch claimed the stallion shipped to him was diseased, that it had been warranted to him, that if Becker appealed the case to this court he would have to enter his personal appearance, that Welch would take judgment for a further sum, and Becker would have the costs to pay. It is alleged that the horse was not diseased and Welch's representations in that regard as well as to any warranty were false, that Becker was "in utter ignorance of the law of the State of Michigan and of the several steps necessary to be taken by defendant to obtain judgment against this plaintiff in the attachment proceedings," and requested Smith to wire Welch that he would surrender the money in the hands of the garnishee defendant "upon dismissal of all judgments and attachments." This Welch at first declined to do, but upon receipt of a letter from Smith importuning him to make such settlement he filed and also sent to Smith a satisfaction of the judgments. In the meantime the bill alleges Becker consulted his local counsel at Pontiac and on the 18th he wired Neithercut & Neithercut to enter Becker's appearance, that he would fight the case on the merits. The attorneys for the respective parties on at least one occasion went to the court house for the purpose of having the judgment set aside but the judge was out of town; they had several conferences, during some of which Welch's attorney was informed of the telegram to fight the case, and Becker's attorney was informed by Welch's attorney that he had advised Welch to settle the case. It is sought by this bill, filed June 15, 1918, to set aside the judgment and settlement on the grounds of fraud. Defendant filed a motion to dismiss

in the nature of a demurrer. From a decree dismissing the bill plaintiff appeals.

Upon this motion to dismiss the facts alleged in the bill must be taken as true and it therefore must be accepted as a fact that the plaintiff here made no representations or warranties as to the stallions or either of them, and that the defendant testified falsely in the attachment case when he testified that he did; we must also accept as a fact that the stallion shipped to defendant was sound, and that defendant falsely testified in the attachment suit that he was not. We therefore have presented to us as the crucial questions in this case whether a bill in equity will lie to set aside a judgment at law obtained by perjured testimony; whether the giving of such testimony constitutes such fraud as gives the court of equity jurisdiction to vacate the judgment; whether a court of equity may grant a new trial or itself retry an issue which has been disposed of on the law side of the court and a determination reached as the result of false testimony. That courts of law have the inherent power to grant new trials of cases tried there, and that courts of equity possess inherent power to grant rehearings in cases heard there, cannot be questioned. Nor can it be questioned that courts of equity in proper cases may afford relief from judgments at law, where the facts are such as to invoke its jurisdiction. The question here, however, is much narrower. It is whether the giving of false testimony in a case tried upon the law side of the court is such a fact as invokes the exercise of equity jurisdiction on the ground of fraud.

In the early case of *Miller* v. *Morse*, 23 Mich. 365, Mr. Justice COOLEY, speaking for the court, said:

"And we do not see why, if this bill should be sustained, the defeated party might not maintain a similar one in nearly every case which the courts of law dispose of.

"Generally, courts of equity do not permit cases to be retried therein which have already been disposed of in the courts of law upon the very point made by the bill. To do so would be to assume an appellate jurisdiction which, by the law, is not conferred upon them."

A leading case on the subject is *Gray* v. *Barton,* 62 Mich. 186. In that case this court, speaking through Mr. Justice MORSE, said:

"But it does not seem to me that the mere allegation that the defendant committed perjury upon the trial, and the belief of the complainant that he can establish such perjury upon a retrial, is such a fraud as will authorize a court of equity to interfere, after the judgment against him in a court of law has been affirmed by the highest tribunal. The establishment of such a right in the defeated party would open the way for another contest in equity in almost, if not every, suit decided at law. There is scarcely a controversy in the courts in which there is not a conflict of testimony, and there are quite often charges of false swearing, and seldom is a case tried and decided in which new evidence cannot be obtained after people suppose it to be ended."

In *Steele* v. *Culver,* 157 Mich. 344 (23 L. R. A. [N. S.] 564), a bill was filed to set aside a judgment based upon perjured testimony. Culver, the defendant, had obtained a judgment in an action for personal injuries of $19,200, which judgment had been affirmed by this court. After the affirmance of such judgment he confessed that his testimony on a material and controlling fact was false and that he and his attorney had suborned witnesses to swear falsely in corroboration of his testimony. This court in an opinion written by Mr. Justice MONTGOMERY there fully reviewed the authorities and following them concluded that a cause of equitable relief was not made by the bill. We there quoted quite fully from the opinion of Mr. Justice Miller in the case of *United States* v. *Throckmorton,* 96 U. S. 61, including the following language:

"The mischief of retrying every case in which the judgment or decree rendered on false testimony given by perjured witnesses, or on contracts or documents whose genuineness or validity was in issue, and which are afterwards ascertained to be forged or fraudulent, would be greater, by reason of the endless nature of the strife, than any compensation arising from doing justice in individual cases."

See, also, the following cases: *Codde* v. *Mahiat*, 109 Mich. 186; *Valley City Desk Co.* v. *Insurance Co.*, 143 Mich. 468; *Andrews* v. *Osborn*, 159 Mich. 77; *Cleveland Iron Mining Co.* v. *Husby*, 72 Mich. 61; *Weisman* v. *Newton Beef Co.*, 154 Mich. 511; *Farmers' Fire Ins. Co.* v. *Johnston*, 113 Mich. 426; *Kelleher* v. *Boden*, 55 Mich. 295.

It must be accepted as the settled law of this jurisdiction that a court of equity may not, in the exercise of its jurisdiction, entertain a bill to set aside a judgment at law on the ground that false testimony was given upon the trial of the issue on the law side of the court. To hold otherwise would be to overrule a long line of decisions of this court and would open the door for a hearing of all cases in equity which have been disposed of on the law side on conflicting testimony. The decisions of this court are harmonious on this question, they announce a correct rule, and one we should adhere to: Such a state of facts may justify a new trial, but it cannot be obtained through the interposition of the court of equity.

We do not perceive how plaintiff would be benefited by a decree setting aside the settlement unless the judgment is set aside. It is quite improbable that he desires such relief alone, as the settlement was for a considerable less sum than the judgment. But the bill does not justify a setting aside of such settlement except as an incident to the main relief asked. It affirmatively appears that Smith was employed by plaintiff to negotiate a settlement with Mr. Welch. It

is not denied that the offer of settlement was authorized. That Smith wrote the letter importuning defendant to accept the offer without the knowledge of plaintiff, or that plaintiff finally determined to contest the case on its merits, do not make a case for equitable relief. The fact that plaintiff was not familiar with our practice, although he had reputable attorneys employed who were, is not so extraordinary as to invoke equity jurisdiction. If settlements are to be set aside because laymen do not understand the intricacies of the judicature act or the practice in this court, few, if any, settlements between business men will be free from attack.

The decree of the court below will be affirmed, with costs to defendant.

BIRD, C. J., and OSTRANDER, MOORE, STEERE, BROOKE, STONE, and KUHN, JJ., concurred.