## CASHMAN et al. v. HITCHCOCK et al.

(Circuit Court of Appeals, First Circuit. December 11, 1923.)

No. 1636.

Corporations ⬡�ößö590(3)—Intent to defraud creditors necessary, when corporation receives assets of another corporation.

When a corporation receives in good faith a transfer of all the assets of another corporation, and pays the selling corporation full consideration therefor, the transfer is not fraudulent, either actual or constructive, and in order to avoid such conveyance there must be proof that it was made with the intention to defraud creditors, and that the grantee had knowledge of such intention.

Appeal from the District Court of the United States for the District of Massachusetts; George W. Anderson, Judge.

Petition by James E. Cashman and others, trustees, against William Harold Hitchcock, receiver of the Avery Chemical Company and others, to establish a claim. From a decree dismissing the petition, the petitioners appeal. Affirmed.

Fred L. Norton, of Boston, Mass. (George H. Brown, of Boston, Mass., on the brief), for appellants.

Henry F. Hurlburt, Jr., of Boston, Mass. (Goldmann Edmunds and Hurlburt, Jones & Hall, all of Boston, Mass., on the brief), for appellees.

Before BINGHAM and JOHNSON, Circuit Judges, and HALE, District Judge.

HALE, District Judge. This case comes before us upon appeal from the decree of the District Court for the District of Massachusetts, dismissing the petition to establish a claim filed in the receivership case, Edgar V. George v. Avery Chemical Company, a Massachusetts corporation.

The petitioners allege that they are holders of seven debenture bonds, of the denomination of $500 each, issued by the Avery Chemical Company, a corporation organized under the laws of Maine; that assets formerly owned by the Avery Chemical Company of Maine were fraudulently conveyed by it to the Avery Chemical Company of Massachusetts; that subsequently these assets were fraudulently conveyed by the last-named company, by mortgage of January 2, 1920, to the International Trust Company as trustee; that, as the holders of these debenture bonds—which are merely unsecured promissory notes— they have an equitable lien on these assets, superior to the lien of the International Trust Company under the mortgage.

The petitioners originally sought to enforce their claim by a bill in equity filed October 5, 1920, in the superior court for Suffolk county, Mass., against both the Maine and the Massachusetts companies and the International Trust Company.

The record shows that, on December 9, 1920, a bill of complaint was filed in the United States District Court for the District of Massa-

⬡➛ßFor other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

chusetts, by Edgar V. George against the Avery Chemical Company of Massachusetts, praying for the appointment of a receiver for the company. On December 14, 1920, the defendant, William Harold Hitchcock, was duly appointed receiver; on December 22, 1920, the petitioners filed in the above-named equity case a petition for leave to prosecute the bill in equity pending at that time in the superior court of Suffolk county; on April 26, 1921, it was stipulated by the petitioners, the receiver, and the International Trust Company that this claim of the petitioners should be prosecuted in the case of George v. Avery Chemical Company of Massachusetts.

The Avery Chemical Company of Maine was a corporation organized under the laws of Maine, having its plant at Littleton, in the state of Massachusetts. In 1902 it issued its so-called debenture bonds, or promissory notes, to the amount of $30,000, bearing interest at the rate of 6 per cent. per annum, payable semiannually on the 1st days of January and July, principal being made payable July 1, 1917. There was in existence a corporation known as the Taylor-Barker Company, owning land and operating a plant thereon at Tewksbury, Mass. In the year 1905 the Maine company purchased all the common stock of the Taylor-Barker Company, 200 shares; and these 200 shares were transferred to Allan A. Clafflin, and held by him for the Maine company. In 1911 the buildings of the Maine company at its plant at Littleton, Mass., were destroyed by fire; thereupon the Maine company built buildings upon the land owned by the Taylor-Barker Company in Tewksbury, and thereafter did all its manufacturing in those buildings, there being no agreement with the Taylor-Barker Company for the use of the land, and no rent paid by the Maine company to the Taylor-Barker Company for its use.

In 1915 it became necessary to finance the Maine company, which at that time owned all the capital stock of the Taylor-Barker Company; the latter company owned the real estate on which the Maine company had built its buildings and was operating its plant. It was agreed by all the parties in interest, in order to straighten matters out and avoid entanglements as to title rights in the property at Tewksbury, that the best way would be to form a new corporation, which should purchase all the assets of both the Maine company and the Taylor-Barker Company. Accordingly the Avery Chemical Company, a Massachusetts corporation, was organized and took over ,all the assets of the Maine company, and all the assets of the Taylor-Barker Company, and paid for those assets by assuming all the indebtedness of the Maine company, with the exception of the $30,000 of debenture bonds maturing July 1, 1917, and the Massachusetts company, in further payment, delivered to the Maine company 5,000 shares of the common stock of the Massachusetts company, at a par value of $10 each, and 300 shares of the 7 per cent. preferred stock of the Massachusetts company, of the par value of $100 each. The dividends on this $30,000, par value, of the preferred stock, were paid quarterly up to January, 1918, and the payments of interest on the debenture bonds of the Maine company came from the dividends which the Massachusetts company paid to the Maine company on the 300 shares

of preferred stock of the Massachusetts company owned by the Maine company, as appears by the testimony of the president of the Massachusetts company. The treasurer of the Maine company testified that, in his opinion, at the time of the formation of the Massachusetts company and the purchase of the assets of the Maine company, the stock turned over to the Maine company was a sufficient and proper consideration for the assets of the Maine company; that he thought, at the time the Massachsetts company took over the assets of the Maine company, the preferred stock of the Massachusetts company, turned over to the Maine company, would be worth at least $100 a share; that the stock of the Massachusetts company, at about the time it was turned over to the Maine company, sold at $100 a share and more; that the 300 shares of the 7 per cent. preferred stock were worth at least $30,000, or the same amount as the outstanding and unpaid debenture bonds of the Maine company; that when the Massachusetts company took over the assets of the Maine company, and voted to pay the Maine company the consideration, namely, the 300 shares of preferred stock and 5,000 shares of common stock, there was no intent in any way to defraud the debenture holders of the Maine company.

The following votes of the Massachusetts company, passed on December 6, 1917, were put into the record:

"Voted: To authorize the treasurer to purchase the preferred stock of this company owned by the Avery Chemical Company of Maine or any part thereof and to pay for the same in an equal par value amount of the 6 per cent. debenture bonds of this company in denominations of twenty-five dollars each, or multiples thereof, said bonds to be dated in four, six, eight, or ten years, in equal installments from the date of issue.

"Voted: That the treasurer, upon acquisition of the preferred stock, class A, of this company, be authorized to sell the same at a price to net the company not less than seventy dollars per share."

These debenture bonds, or promissory notes, of the Massachusetts company, authorized by this vote, were issued and delivered to the Maine company in exchange for stock of the Massachusetts company, and were in the treasury of the Maine company at the time of the receivership of the Massachusetts company in December, 1920.

It appears that at the time these votes were passed, and the debenture bonds of the Massachusetts company were given to the Maine company, the debentures of the Maine company had matured, on July 1, 1917, and had become due and payable.

In the spring of 1918 the treasurer of the Massachusetts company had a conference with the president of the International Trust Company in regard to a mortgage and a bond issue, the Massachusetts company needing additional funds to carry on its business. The trust company was asked to act as trustee. It was found necessary that the title to the Avery Chemical Company be registered, by advice of counsel. Again, in June, 1919, one George Defren had a conference with the president of the International Trust Company and told the president of that company that he would pay some money into the corporation and arrange to take a first mortgage bond issue from the Massachusetts company; and it was arranged with the trust company to loan Defren $195,000 on $250,000 par value of the bonds, with

additional security of $50,000 worth of other securities which Defren then had. Under the contract between Defren and the Massachusetts company, the mortgage was to be put on by January 2, 1920. It had been decided to register the title to the property in the land court. On January 2d an examination of the title by the land court had proceeded far enough so that registration was expected, but the registering had not yet been done. The formal execution of the mortgage took place on January 2, 1920, and proper record of the mortgage was made. In February, 1920, there was a decree of registration by the land court of the land conveyed by the mortgage, and due registry of the mortgage followed in the land court. On March 3, 1920, the bonds were issued and delivered to Defren, who paid for $250,000 par value of the bonds, $200,000 in cash, or at the rate of $800 per bond. On the same day the trust company loaned to Defren $195,-000 on the $250,000 bonds of the Massachusetts company issued on that date, plus the additional general securities above mentioned.

Testimony shows that the price of $800 for a $1,000 bond paying 6 per cent. in March, 1920, was a fair price.

There is no dispute that the money was paid in good faith.

The District Court dismissed the petition. The judgment of that court is brought to us by this appeal. The appellants claim that they are in a better position than the unsecured creditors of the Massachusetts company, and that they are entitled to be paid in full, before the bonds secured by the mortgage are paid. The petitioners do not claim any actual fraud; they claim that they have an equitable lien on the property of the Avery Chemical Company of Massachusetts; that they can go behind the mortgage to a bona fide purchaser because of a constructive fraud in the transfer of all the property of the Maine company to the Massachusetts company; that such transfer must be conclusively presumed to be constructively fraudulent without going into the question of the intent of the parties; that the mortgage to the International Trust Company was fraudulent as against appellants, and that the trust company is chargeable with notice of such fraud; that there should be applied to the payment of the petitioners' claims all the property received by the Massachusetts company from the Taylor-Barker Company and from the Maine company, and included in the mortgage from the Massachusetts company to the trust company. It is contended, as a matter of law, that the transfer by a corporation of all its assets to another corporation is constructively fraudulent, even though no actual fraud is shown, and that a fraudulent intent is conclusively presumed; citing Hibernia Insurance Co. v. St. Louis etc., Transportation Co. (C. C.) 10 Fed. 596; Id. (C. C.) 13 Fed. 516; Blair v. St. Louis, H. & K. R. Co. (C. C.) 22 Fed. 36; No. Pacific Ry. Co. v. Boyd, 228 U. S. 482, 502, 33 Sup. Ct. 554, 57 L. Ed. 931, and many other cases.

We have stated the testimony with some detail, in order that it may appear whether any fraud, either actual or constructive, is to be found anywhere within the facts stated. The testimony shows fully the reasons for the transfer of property from the Maine company to the Massachusetts company. The Maine corporation and the Taylor-Bar-

ker Company had got their properties mingled together; but it affirmatively appears that they did not combine their ownerships with any intent to commit a fraud upon creditors, or upon anyone else. In fact, the stock of the Taylor-Barker Company, all of which was owned by the Maine company, represented, not only the original property of the Taylor-Barker Company, but all that the Maine Company had expended upon the Taylor-Barker property. Either company could have transferred to the other, and left creditors in as good position as they were before. But, upon conferring fully with counsel, it was decided that the best way to avoid any possible entanglements as to title rights in the property would be to form a new corporation, and have that corporation purchase all the assets of both old companies; as a result of that conclusion, the new Massachusetts company was organized and took over the assets of the Maine company and the assets of the Taylor-Barker company. There was a legitimate reason for doing this; neither company was insolvent or in a failing condition; and it is affirmatively shown that there was no intent to hinder, delay, or defraud creditors.

We agree with Judge Anderson, who heard the case in the District Court, that there is no evidence whatever in the whole transaction which "indicates any bad faith or any purpose on the part of anybody to disregard any business or legal obligation." The new company had all the means of satisfying creditors which the old company had; it paid full value for the assets conveyed to it. The reason for the transfer was perfectly legitimate; the transaction is shown to have had no element of fraud, constructive or otherwise.

In order to set aside a conveyance as fraudulent, there must be an actual intent shown, on the part of the transferror, to hinder, delay, and defraud creditors. When a corporation receives in good faith the transfer of all the assets of another corporation, and pays the selling corporation full consideration therefor, the transfer is not fraudulent, either actual or constructive. In order to avoid such conveyance, there must be proof that it was made with the intention to defraud creditors, and the grantee had knowledge of such intention. Green v. Tanner, 8 Metc. 411, 419; Pierce v. O'Brien, 189 Mass. 58, 75 N. E. 61; Hollins v. Coal & Iron Co., 150 U. S. 371, 383, 384, 14 Sup. Ct. 127, 37 L. Ed. 1113; Fogg v. Blair, 133 U. S. 534, 541, 10 Sup. Ct. 338, 33 L. Ed. 721; Chattanooga R. & C. Co. v. Evans, 66 Fed. 809, 819, 14 C. C. A. 116. See Cook on Corporations (7th Ed.) §§ 662, 673, 884. See, also, the careful comparison of cases made by Judge Morris in Ozan Lumber Co. v. Davis Sewing Machine Co. (D. C.) 284 Fed. 161.

Courts are undoubtedly charged with a duty to examine with care any transaction involving the transfer of all of the assets of one corporation to another; they have often announced the doctrine that, whenever such transfer is made to delay or defraud creditors, it cannot be upheld as against such creditors; and that the transferee, if he takes with notice, takes cum onere. In the Hibernia Insurance Co. Case (C. C.) 13 Fed. 516, 520, supra, it was held that the sale by one company of all its property to another company, consisting principally of the same persons, was fraudulent and void as to the creditors of the

company, not assenting thereto, and that such sale was intended to hinder and defraud creditors. In that case the record disclosed, and Judge Treat found, that "the evidence is clear enough that there was a hidden purpose in the change of corporate existence to escape its liabilities which equity does not tolerate. A mere change of name cannot avoid obligations." In Blair v. St. Louis, H. & K. R. Co. (C. C.) 22 Fed. 36, 38, supra, the court followed the doctrine which we have just stated; but the opinion of the court showed that it was passing upon a case where the corporation in question was undertaking to escape its liabilities, and to evade certain duties which it had to perform, of a public as well as of a private character; and the court held that, under the facts disclosed, the new corporation must be treated as the successor of the prior corporation, and charged with a trust upon the assets received. In Northern Pacific Ry. Co. v. Boyd, 228 U. S. 482, 33 Sup. Ct. 554, 57 L. Ed. 931, supra, the court held that contracts for reorganization made between bondholders and stockholders of corporations, insolvent or financially embarrassed, involving the transfer of the corporate property to a new corporation, while proper and binding between the parties, even when made in good faith, cannot defeat the claim of nonassenting creditors.

In none of the cases brought to our attention, and in none we have found, have the courts undertaken to state conclusions inconsistent with the cases which we have cited, and which hold that, in order to set aside, as fraudulent, a conveyance of all the assets of one corporation to another, there must be an actual intent shown on the part of the transferror to hinder, delay, and defraud creditors, or to accomplish some fraud.

We cannot sustain the contention of the petitioners that, without consideration of the intent of parties, such conveyance is constructively fraudulent.

The petitioners urge, further, that the mortgage to the trust company was fraudulent, and that they are entitled to have applied to the payment of their claim all the property received by the Massachusetts company from the Taylor-Barker Company, and from the Maine company, and included in the mortgage from the Massachusetts company to the trust company. Upon examining the record we are satisfied that no fraud is shown, with reference to the execution of the mortgage, or in the issue of the bonds; that the bonds were sold at a fair price, in good faith, and without notice to the purchaser, or to the mortgagee, of the transactions leading up to the mortgage and the issue of the bonds.

The record makes it clear, as we have already said, that the sale from the Maine company to the Massachusetts company was made in good faith, for a full consideration, for a lawful purpose, and without any intent to hinder, delay, or defraud creditors. It was free from fraud, actual or constructive.

In view of these conclusions, it is not necessary for us to pass upon further questions raised by the appeal.

The decree of the District Court, dismissing the petition, is affirmed; the appellees recover costs in this court.