HIBERNIA INS. CO. v. ST. LOUIS & NEW ORLEANS TRANSP. CO.*

(*Circuit Court, E. D. Missouri.* September 28, 1882.)

1. CORPORATIONS—FRAUDULENT TRANSFER OF ASSETS:

Equity will not permit the stockholders in one corporation to organize another, and transfer all the corporate property of the former to the latter, without paying all the corporate debts.

2. SAME—ENFORCEMENT OF OBLIGATIONS.

Where such a transfer is made, the obligations of the old corporation may be enforced against the new to the extent of the assets received by it.

For report of opinion on the demurrer to the bill in this case, see 10 FED. REP. 596.

*O. B. Sansum* and *George H. Shields,* for plaintiff.

*Given Campbell* and *Thomas J. Portis,* for defendant.

McCRARY, C. J. This case has been considered upon the plea interposed by the defendant to the fifth subdivision of the bill, and the proofs adduced in support of the same. The bill alleges that the complainant is, by subrogation to the rights of certain shippers, a creditor of the Babbage Transportation Company, a corporation of Missouri, and that, after the creation of the indebtedness, said corporation transferred all its property to the St. Louis & New Orleans Transportation Company, another Missouri corporation, without making provision for the payment of complainant's claim. It is alleged that Henry Lourey, being the President of said Babbage Transportation Company, and the principal owner of the stock thereof, organized the said St. Louis & New Orleans Transportation Company, and caused all the property of the former to be sold and transferred to the latter, without paying or securing the debt due the complainant. It is averred that the said sale was made without the payment of any consideration by said St. Louis & New Orleans Transportation Company. Then follows the following allegations, to which the plea applies:

"*Fifth.* And your orators charge that said sale and transfer of the property of said Babbage Transportation Company to the said defendant, St. Louis & New Orleans Transportation Company, was fraudulent as against the rights of the complainants, creditors of the said Babbage Transportation Company, and that the said Henry Lourey and the said St. Louis & New Orleans Transportation Company had notice of said fraud; and so your orators allege and charge that said St. Louis & New Orleans Transportation Company was not a *bona fide* purchaser of said property for a full and valuable consideration,

*Reported by B. F. Rex, Esq., of the St. Louis bar.

without notice of the rights and claims of your orators in the premises, and that said sale and transfer of said property was made subject to the rights of all persons who had claims, debts, or demands against said Babbage Transportation Company, and the claim and demand aforesaid of your orator.

"Wherefore your orators pray process against the said St. Louis & New Orleans Transportation Company, the said Babbage Transportation Company and the said Henry Lourey, and that they be cited to appear before this honorable court, and true answer make to all and singular the matter aforesaid, their answer under oath being hereby expressly waived, and that this honorable court will be pleased to decree payment of the aforesaid debt to your orators, with interest thereon and costs of suit, and that said St. Louis & New Orleans Transportation Company be restrained from selling or otherwise disposing of any of the said property until your orators' said debt, and interest and cost, be paid and satisfied, and that until the said debt be satisfied your orators have a lien upon said property in said Exhibit A described, and that this honorable court will be pleased to give and decree to your orators such other and further relief as to law and justice and as this honorable court shall be able to give in the premises."

The plea avers that the Babbage Transportation Company, being the owner of its property, for a valuable consideration, and with the consent of all its stockholders, sold and delivered the same to the St. Louis & New Orleans Transportation Company; that the consideration paid consisted of 500 shares of the capital stock of the last-named company, of the value of $100 a share, and the agreement of said last-named company to pay all the then known outstanding debts of the former company, not to exceed $42,000; that the sale was *bona fide*, and that neither of the parties thereto were aware that the old company was in any manner liable to or indebted to the complainant, or the parties under whom it claims by subrogation; that the stock was delivered to the old company, and the new company paid all the debts of which the parties had notice at the time of the sale. All fraud is denied. The proof shows the following facts:

(1) The Babbage Transportation Company sold all its property to the St. Louis & New Orleans Transportation Company in consideration of 500 shares of full-paid stock in the latter company, and the payment of the debts of the former company to an amount not exceeding $42,000. (2) This consideration was paid by the delivery of the stock and the payment of the debts, amounting to something more than $42,000, but not including the claim of complainant. (3) All the stockholders in the old company assented to the sale on these terms. (4) Henry Lourey was a large stockholder in the Babbage Transportation Company, and was also president, general manager, and treasurer thereof. (5) The said Henry Lourey was also then an officer of the St. Louis & New Orleans Transportation Company, and the stockholders

of the two companies were substantially identical. (6) The officers and stockholders in both corporations at the time of the sale knew of the accident and loss out of which the complainant's claim arose, but no demand had been made for the payment of the sum, and they did not know that any would be made. (7) At the time of the sale inquiry was made as to the amount of outstanding indebtedness of the Babbage Company, and the same was estimated at about $42,000.

Upon these facts this court holds that the sale by the Babbage Company of all its property to another corporation, composed mostly, if not wholly, of the same persons, was fraudulent and void as to all creditors of the former company not assenting thereto. The purchaser knew that it was buying all the property of the seller, and that, by the transaction, the latter was being deprived of the means and power of meeting any of its outstanding obligations. The fair inference from the transaction is that the old company was about to be dissolved, and to cease to be. It was to be absorbed by the new company. This is the inevitable consequence of the formation of the new company, composed substantially of the same persons, to transact the same business at the same places, and with the same property. By the transfer, the creditors of the old company were deprived of the means of enforcing their claims. Probably no officers of the old company have since been elected, and it is to be presumed that none will be. This being so, it is at least doubtful whether service of process could be obtained so as to procure a judgment at law against the old company. And if a judgment were obtained, it could not be collected out of any assets in the possession of the old company, because it had turned all its assets over to the new company. It has received, it is true, paid-up stock in the new company, but that has doubtless been disposed of; or, if it has not been, it may at any moment be transferred. Equity will not compel the creditor of a corporation to waive his right to enforce his claim against the visible and tangible property of the corporation, and to run the chances of following and recovering the value of shares of stock after they are placed upon the market. A distinction with respect to transactions of this character exists between a corporation and a natural person. A natural person may sell all his property for a fair consideration, if the transaction is *bona fide*, and the buyer will not be required to take care that the seller provides for and pays all his debts. A corporation, unlike a natural person, by disposing of all its property, may not only deprive itself of the means of paying its debts, but may deprive itself of corporate existence, and place itself beyond the

reach of process at law. At all events, equity cannot permit the owners of one corporation to organize another, and transfer from the former to the latter all the corporate property, without paying all the corporate debts; and that is the exact case now before us.

Here was a corporation engaged in a profitable business, and owning and possessing property valued at $92,000, exclusive of its franchise. It owed debts confessedly amounting to more or less than the value of its property. It ceases to transact business. Its stockholders organized themselves into another corporation, and all the property is transferred from the old to the new. It matters not that the stockholders in the two companies may not be precisely identical. We are not prepared to say that it would make any difference if the members of the new company were none of them interested in the old. The thing which we pronounce unconscionable is an arrangement by which one corporation takes from another all its property, deprives it of the means of paying its debts, enables it to dissolve its corporate existence and place itself practically beyond the reach of creditors, and this without assuming its liabilities. The fact here, however, appears to be that the owners of the two corporations are substantially identical, and hence there is a still stronger case in equity. It may be that in such a case the purchasing company might be permitted to show, by way of defense, that it has paid debts against the old corporation to an amount equal to the whole value of the property received from it, including the value of its franchise. But this is a doubtful question, which does not arise here, and we express no opinion upon it.

TREAT, D. J., *concurring.* My views in this case were fully expressed in the opinion on the demurrer to the bill. In the light of the decision by the United States supreme court then referred to, the plaintiff can pursue its demand against a new corporation which is, though nominally a different corporation, actually the same under a different name, having obtained all the assets of the old.

The facility with which new corporations are formed under local statutes to succeed to rights of property by transfer from the old corporations is to be considered, and such transfers are not to be held in equity destructive of prior and existing rights. A corporation with obligations determined or undetermined cannot change its name or assume the form of a new corporation, and thus escape its obligations, or relieve the new corporation of the obligations of the old; at least, to the extent of such obligations and assets.

It is said that the new corporation acquiring the property of the old for adequate consideration should not be answerable for the debts of the old; that it could buy the property, no lien thereon existing, free from all demands at large; and consequently the new corporation, like any other purchaser, is not responsible, personally or otherwise, for the debts of the vendor. That proposition need not be disputed. But what is the case before the court? The Babbage Company had possibly incurred a liability for its violations of contracts. The original parties had not asserted their demand. The questions were whether the Babbage Company was liable for violations of contracts of affreightment. The plaintiff paid the losses and became subrogated to the rights of the shippers. In the mean time the Babbage Company ceased practically to exist, and transferred all its property to the St. Louis & New Orleans Transportation Company, whereby it had technically no property to respond to plaintiff's demand. Can the transferee, under the circumstances, be held to answer the demand?

The plea avers substantially that the new corporation purchased, for valuable consideration, the property of the old corporation, paying therefor $50,000 in stock of the new, and assuming the obligations of the old to the extent of $42,000; that said obligations have been met, and additional obligations, which Capt. Lourey has paid, to the extent of about $13,000.

It is the duty of the court to examine the whole transaction, and to cut through mere paper transfers designed to obstruct or destroy the rights of parties. The evidence sufficiently discloses that the new corporation was a mere continuance of the old, with substantially the same parties in interest—a mere change of name. Whether that change, with attendant transfers, was designed or not to defeat all outstanding demands of the old corporation, it is evident that substantially the two corporations are the same, and that the new must respond to the obligations of the old. The evidence is clear enough that there was a hidden purpose in the change of corporative existences to escape possible liabilities which equity does not tolerate. A mere change of name cannot avoid obligations. The new corporation took all the property of the old, went forward with its business, had the same stockholders, except a few formal ones, was, in short, the old corporation, and now seeks to escape the obligations of the old, rescuing the property of the latter from the demands the former was bound to meet. Can this be done? The old corporation and its property were liable to the demands of the plaintiff. The new cor-

poration must respond to the extent of the property acquired, and possibly to the full extent; that is, if property sufficient therefor is in its possession. This is a proceeding in equity, wherein mere colorable pretenses are to be disregarded. Shiftings of corporate names cannot defeat positive rights, any more than the change of the name of a natural person can absolve him from his personal obligations.

The evidence discloses that the obligations of the Babbage Company still subsist against its corporate successor; at least, to the extent of assets acquired.

If these views are not sound, a corporation with demands pending can transfer all its assets to a new corporation, and thus leave the demands inoperative, although said new corporation is the old, only in change of name. The evidence shows that since this cause was instituted a new consolidation has occurred, whereby another transfer of property has been had. Is it to be considered in equity that such transfers and practical dissolutions of corporations will prove effectual to defeat existing and valid demands? Or will the corporate successors be held to the obligations of their predecessors; at least, to the extent of the assets acquired? It may be that between the old and new, in connection with lien or general demands, an accounting may be had, so that unpaid creditors may know what remains. If the new company has paid the full value of the property acquired, then it possibly may not be answerable; but if it has merely issued to the old its stock therefor, why should it not, at least to the extent of that stock, which represents values for property acquired, meet the obligations to which such stock should fairly be held subject?

Property to the amount of $92,000 was transferred, and $42,000 indebtedness was actually paid. Hence property of the old corporation is in possession of the new to the extent of $50,000, which ought to be subject to the obligations of the old company. The fact that the new corporation has issued its stock to the old for said $50,000 cannot defeat the rights of parties.