## ARMOUR v. E. BEMENT'S SONS.

### (Circuit Court of Appeals, Sixth Circuit. June 16, 1903.)

### No. 1,157.

**1. CORPORATIONS—REORGANIZATION—IDENTITY OF OLD AND NEW CORPORATIONS.**

A new corporation, regularly organized by the officers and stockholders of an existing corporation for the purpose of acquiring its property and assets, and which does acquire the same by purchase at judicial sales, cannot be treated as a continuance of the old corporation, and liable at law for its debts, whatever may be its liability in equity to creditors of the old corporation in respect to the property, if fraud is shown in the transfers.

**2. SAME—LEGALITY OF ORGANIZATION—COLLATERAL ATTACK.**

The legality of the organization of a corporation cannot be attacked collaterally in a private suit against it, but only in a direct action by the state.

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

Thomas, Cummins & Nichols, for plaintiff in error.

Cahill & Wood (S. T. Douglas, of counsel), for defendants in error.

Before LURTON and SEVERENS, Circuit Judges.

SEVERENS, Circuit Judge. This is an action of debt, brought by the plaintiff in error against "E. Bement's Sons," a corporation organized under the laws of Michigan, to recover the amount of four several judgments theretofore obtained by different parties against "E. Bement & Sons," also a Michigan corporation, but organized at an earlier date than the other. The plaintiff claims to own these judgments by assignment from the parties in whose favor they were rendered, and he sues this defendant, "E. Bement's Sons," upon the theory that it is the same corporation, with a new name, as "E. Bement & Sons," against which the judgments were recovered. Certain transactions to which these corporations were parties, occurring about the time of the organization of the new company, are set out in the declaration in support of the plaintiff's contention that the new corporation is identical with the old. The defendant appeared and pleaded the general issue, and gave notice of certain special matter which it would prove thereunder. The case came on for trial before the court and a jury, and upon the opening statement by counsel for the plaintiff of the facts which the plaintiff expected to prove to maintain his suit, the court, either upon its own motion or upon objection of counsel for defendant—it is not clear which—indicated its opinion to be that, upon the facts pleaded and stated, no cause of action was shown which would entitle the plaintiff to recover in this suit against the new corporation, and the jury was directed to find a verdict for the defendant. To this direction counsel for the plaintiff excepted. This exception presents the main controversy upon this writ of error.

It becomes necessary, therefore, to go into further detail of the facts alleged upon which the plaintiff relied to maintain his right to recover;

¶ 1. See Corporations, vol. 12, Cent. Dig. § 2316.

the vital question being whether such facts would justify the conclusion that the defendant was identical with the corporation against which the judgments sued on were rendered. For we think that in a suit of this character, where there has been no assumption of the debts of the old corporation, and the circumstances negative any purpose to assume them, it must appear that the defendant corporation is the same legal entity as that whose obligation is sought to be charged upon it, as one of its own; that is to say, it must be the same legal person, having a continued existence under a new name. Trust Co. v. Bridges, 57 Fed. 753, 6 C. C. A. 539.

The case as stated in the declaration and supplemented by certain agreed facts is this: The corporation, "E. Bement & Sons," was organized and had been engaged in the business of manufacturing and selling agricultural implements at Lansing, Mich., for several years prior to 1896. On May 16th of that year, having become financially embarrassed, it executed two mortgages, one of its real and one of its chattel property, to Edward Cahill, in trust for certain named creditors, to secure the sum of $150,000, in three equal payments in 30, 60, and 90 days, respectively, and also at the same time executed two other mortgages, one of the same real property and one of the same chattels, to Arthur O. Bement, its president, in trust for the rest of its creditors, to secure the sum of $190,000, in three equal payments in 4, 5, and 6 months, respectively. These second mortgages expressly stated that they were given subject to the first. As is seen, the sum total of the indebtedness thus secured amounted to $350,000. It is stated under a videlicet that the property was of the value of $700,000. The assignors of the plaintiff, namely, the Belfont Iron Works Company, the Schloss Iron & Steel Company, the Canton Steel Company, and Rogers, Brown & Co., who were creditors secured by the second mortgages above mentioned, representing about $9,500 of the debts, refused to accept the securities, and brought suits against E. Bement & Sons, some in the state and some in the federal courts, to recover their demands, and recovered the judgments which they assigned to the plaintiff. Some of these creditors issued executions and filed bills in aid thereof, alleging fraud in the making of the mortgages, which are pending. One dismissed its bill. Rogers, Brown & Company did not take out any execution.

Bement & Sons compromised $60,000 of the debts of the second mortgage at 50 cents on the dollar, and proposed to the holders of the other debts to settle their claims by paying one-half thereof in the company's stock and one-half in the company's bonds secured by a mortgage upon its property. But this involved the discharge of the mortgages which already covered it; and, while most of the creditors assented, the scheme fell through because some of them refused. Thereupon A. O. Bement, the trustee in the second mortgages, took possession of the mortgaged chattels, duly advertised them for sale, and sold them at public auction, pursuant to the power contained in the mortgage. They were bid off for the sum of $100, which it is alleged was not in fact paid, by Clarence E. Bement, one of the directors of E. Bement & Sons. A. O. Bement, who was trustee of the second mortgage of the realty, also filed in the state circuit court for

Ingham county a bill to foreclose the mortgage, and included as defendants all the assignors of the plaintiff except the one who had not obtained any lien. At this time all the remaining creditors of E. Bement & Sons, except the assignors of the plaintiff, had accepted the proposition of the company to settle their claims for its stock and bonds. The foreclosure suit proceeded to a decree of sale.

Meantime a new corporation, styled "E. Bement's Sons," had been organized, by those who had been the principal stockholders in the old corporation, under the provisions of the laws of Michigan, with capital stock in the amount of $20,000, for the purpose of carrying on the same kind of business, in which corporation the directors in the old corporation were also the directors. But the stock of the new corporation, except one share each to the officers, was taken by the sons of two of them and the wife of another, who it is alleged were without means to pay for the stock. The real estate was sold under the above-mentioned decree of foreclosure of the second mortgage for the sum of $101,000 to the new corporation, "E. Bement's Sons," to which the old corporation had already conveyed the equity of redemption for a nominal consideration. It is alleged that this consideration, the $100,000, was not paid. But this means that it was not paid in cash; for it is conceded that the solicitors for the complainant receipted for the purchase price and that the sale was confirmed. Clarence E. Bement, who had bought for the purpose, also conveyed the chattel property to the new company; and thus the new company, through foreclosure of the second mortgages and the satisfaction of the purchase price on such foreclosure to the creditors, became possessed of the assets of the old, subject to the first mortgages given in trust to Cahill; and it has been carrying on the same business, which, indeed, had been carried on continuously from the beginning. The plaintiff, however, alleges that the organization of the new company was made by the officers of the old company with intent to transfer to it the assets and business of the old company without paying its debts, and thereby defrauding its creditors, some of whom the plaintiff represents. And it may be shortly stated that it is charged that all of the proceedings subsequent to the giving of the mortgages of May 16, 1896, and ending with the acquirement of the assets of the new corporation, were taken and had with the intent and purpose of defrauding the creditors of the old one.

From these premises the plaintiff draws the conclusion that the so-called corporation, "E. Bement's Sons," is simply a continuation of the original corporation, "E. Bement & Sons," and is subject to his suit in its new name. But we think the Circuit Court was right in holding that the plaintiff's contention cannot be maintained. Many cases have arisen in which creditors of a defunct corporation, pursuing the assets of their debtor into the hands of a new corporation built upon the wreck of the former, have been allowed to reach and appropriate such assets to the payment of their debts, upon the ground that the transfer from their debtor was fraudulent and void as against its creditors; and in such cases the courts, looking at the transaction with a view to discovering the motive which inspired it—that is to say, whether it was an honest and lawful purpose, or was a fraudulent and self-serving

one, resulting in a trust or other advantage for those who effected the transfer—have often characterized in broad language the second corporation as substantially the same with its predecessor, and have awarded a remedy against the transfer, if the purpose was fraudulent. But this is done, not upon the ground that the new corporation is identical with the old in a strictly legal sense, and therefore the one upon which the obligation to pay rests, but upon the ground that it has unlawfully obtained assets which it is bound to surrender to the creditors. I Morawetz on Corp. § 791. Undoubtedly, if a corporation were simply to change its name under a statute permitting it to do so, or were to amend its charter, or be otherwise modified or transformed, or be consolidated with another, under like authority, the corporation ensuing would have a continued identity with the former. Its essence and franchises are substantially continued, and the corporation is not extinguished. In such cases, nothing occurs which extinguishes its obligations. In some instances, where such change is serious, as in the case of consolidation, the statute authorizing it expressly declares that the new corporation shall become liable for the debts and liabilities incurred by the constitutent members; and it has been held that without any statutory declaration it would be implied that such debts and liabilities would pass with the franchises and assets of the constituents to the corporation in which it became merged. But no such consequence happens simply because a new corporation is formed by those who are concerned in an existing one. Sometimes peculiar circumstances arise in the succession of corporate organizations in which the powers of a court of equity may be properly invoked to work out the rights of parties. In such cases, if justice requires it, the court will look beyond matters of form, and treat the corporation as an association of individuals, and, on bringing the parties before it, may administer equitable rights as the nature of the case may require. But a court of law, which recognizes a corporation only as a distinct entity, and must proceed upon strictly legal methods, has not the means, and is not therefore the proper forum in which, to investigate and adjudge such matters.

It is of common occurrence that an insolvent corporation is compelled to go into liquidation. The individuals who compose it seek to save what they can from the wreck by organizing themselves in a new corporation, and buying such of the properties of the former corporation as they can profitably use in the new. No principle of law is violated by their forming the new organization; and no right of the creditors of the old organization is injured, provided its assets are lawfully acquired by the new one. If they are not lawfully acquired, the creditors have the same right to pursue the assets as they would have if any other person had unlawfully acquired them; and it is difficult to find any basis for any other equity which they could claim as inuring to them from the transaction. The stockholders of an insolvent corporation are not bound to maintain the corporation in a hopeless struggle. The claims of creditors do not impose such an obligation, and public policy requires that they should be free to engage in new enterprises. They may do this, but they cannot gain profit from the assets of the corporation, to the detriment of the lawful

rights of creditors, any more than any other person may. To be sure, the relation of the stockholders, and especially of the directors, to the subject-matter, may afford reason for close scrutiny of such transactions; but in the end the question is one of fair dealing in the exercise of a legal right. 1 Morawetz on Corp. § 811. All this is inconsistent with the idea that a new corporation, organized with the intention of acquiring for it the assets of an existing one, must, upon acquiring them, be regarded as the old corporation in a new dress, and so liable for the old debts. The fact that the directors are the same persons as the directors of the old has no tendency to prove the identity of the corporations, where, as here, each is conceded to be separately organized at widely different dates, with different stockholders and with different stock, under laws which, when complied with, create a distinct legal body, having rights and duties conferred and imposed upon it by its separate charter.

We do not enter upon the consideration of questions raised in regard to the regularity of the organization of the new company, as affected by the suggestion that no part of the capital stock was paid in cash, a question in which the plaintiff apparently has no concern, or whether in fact there was any fraud in the acquisition of the property of the old company by the new, because, first, the validity of the incorporation cannot be tested in this collateral and private suit, but only in a direct proceeding by the state (1 Morawetz on Corp. § 2022), and because, secondly, the question whether there was any fraud in the transfer from the one corporation to the other which affected the validity of such transfer has no relevancy to the question whether the new corporation is liable to pay the debts of the old, however important it might be in a suit prosecuted for the purpose of subjecting the assets transferred to the payment of the debts of creditors.

The plaintiff sues the defendant, "E. Bement's Sons," as "a corporation organized and doing business under the laws of Michigan," and alleges in his declaration that it was organized and incorporated "for no other purpose than to purchase said real and personal property of said E. Bement & Sons at said pretended and fraudulent sales" —meaning the foreclosure sales—"without any consideration and relieved from the claims, demands, and liens of the plaintiff and his assignors," and also "avers that the said E. Bement & Sons has ceased to do business, and by said fraudulent transfers of all its real and personal estate to the defendant has placed all its property aforesaid beyond the reach of execution, and the said defendant is now in possession thereof, and claiming and asserting ownership of said property by reason of said alleged and fraudulent sales." These averments amount to a concession of the incorporation of the defendant, de facto sales of the property to it by the other company, and a claim that the sales were, as against creditors, fraudulent and void. But, if it were true that the defendant was the same corporation as the old one, there could be no such thing as a sale even de facto; for that could only be where a sale is possible, and, moreover, there would be nothing in the way of levying execution upon the property, or selling under one already levied. Perhaps a bill in equity in its aid might be expedient. But that is another subject with which we have not now to deal.

The view we take of the main question renders it unnecessary to prolong the consideration of the case in respect of incidental questions. The judgment must be affirmed, with costs.