OZAN LUMBER CO. et al. v. DAVIS SEWING MACH. CO. et al.

(District Court, D. Delaware. October 27, 1922.)

No. 465.

1. Corporations ⬅590(3)—Corporation to which other corporation transfers all its assets not liable for transferor's debts, in absence of statute or contract.

Where one corporation sells or otherwise transfers all its assets to another company, the transferee generally is not liable for the debts and liabilities of the transferor, in the absence of statutory provisions therefor, statutory consolidation or merger, or express contract.

2. Corporations ⬅47—Change in name of corporation by amendment of charter does not affect its liability for debts incurred before the change.

A mere change in the name of the corporation, by amendment of its charter under a special act or the general law, does not affect the corporation's liability for debts incurred before the change, since the identity of the debtor corporation is not lost thereby.

3. Corporations ⬅37—Extension of charter does not create separate corporation, unless such intention clearly appears.

A mere extension of the charter of a corporation before its expiration does not, unless such an intention appears, create a separate and distinct corporation, but only continues the existence of the old corporation.

4. Corporations ⬅37—Legislature may revive and continue expired charter.

A legislative act may revive and continue a charter that has expired.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
284 F.—11

5. **Corporations ⟨⟩514(2)—Bill held not to plead continued existence of corporation under new name.**

Bill alleging that the assets transferred by a named corporation to other named corporation constituted all the assets of the first corporation, and that such first corporation has nothing against which the plaintiffs may seek recourse save the capital stock received by it from the second corporation, *held* not to plead continued existence of first corporation under the name of such second corporation.

6. **Corporations ⟨⟩590(3)—Simple contract creditors of transferor corporation cannot recover against transferee on ground that transferee actively participated in transfer.**

Where one corporation transferred all its assets to other corporation, simple contract creditors of first corporation, without any interest in or lien on the transferred property, and without a trust impressed thereon in their favor, could not recover transferor's debts from the transferee on the ground that transferee actively participated in the transfer.

7. **Corporations ⟨⟩590(3)—Where corporation transfers its assets to another corporation, equity will not impress trust in favor of simple contract creditors of transferor.**

Where one corporation transferred all its assets to another corporation, equity will not impress a trust on the assets for the benefit of simple contract creditors of transferor.

8. **Fraudulent conveyances ⟨⟩241(3)—Rule as to right of general creditor to set aside transfers by debtor in fraud of creditor stated.**

A general creditor, having no interest in or lien upon property transferred by debtor, cannot, in the absence of a trust in his favor, invoke the equitable jurisdiction of a federal court to set aside transfers by the debtor of his property in fraud of the creditor, or to obtain the seizure of such property and its application to the satisfaction of his claim, or to obtain other relief for his direct benefit against the transferee.

9. **Corporations ⟨⟩590(3)—Unsecured creditors of transferor corporation, transferring assets to another corporation, cannot subject the same to payment of claims, where transferor received full consideration.**

When a corporation receives in good faith a transfer of all the assets of another corporation, and pays to the transferor full consideration therefor, the transfer is not fraudulent as to the unsecured creditors of the transferor, and they cannot subject the property in the hands of the transferee to the payment of their claims, or sue to set aside the transfer.

10. **Corporations ⟨⟩590(3)—Transfer of all of corporation's assets in return for stock in another corporation held not fraudulent to other corporation's creditors.**

Where one Delaware corporation transferred all its assets to another Delaware corporation in consideration for stock in other corporation, the simple contract creditors of transferor were not entitled to have the property in the hands of transferee subjected to payment of their claims, or to have the transfer set aside, in view of Const. Del. art. 9, § 3, and Rev. Code Del. 1915, § 1928, authorizing a Delaware corporation to issue its capital stock for personal property or real estate; such transfer not being fraudulent as to such creditors.

11. **Corporations ⟨⟩591—Creditors of transferor corporation held not entitled to bring action against transferee corporation, in view of adequate remedy at law against transferor.**

Where one corporation transferred all of its assets to other corporation in return for stock in other corporation, simple contract creditors of first corporation could not bring action in equity to enforce payment of debt against other corporation, since they had an adequate and complete remedy at law; the stock received by first corporation being subject to seizure and sale for satisfaction of any judgment that might be obtained under Rev. Code Del. 1915, § 2009.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit by the Ozan Lumber Company and another against the Davis Sewing Machine Company and another. On motion to dismiss bill. Motion granted.

Charles F. Curley (of Saulsbury & Curley), of Wilmington, Del., for plaintiffs.

Robert H. Richards, of Wilmington, Del., for defendants.

MORRIS, District Judge. This is a motion to dismiss the amended bill of complaint in a suit instituted by simple contract creditors of Blue Bird Manufacturing Company to recover the amount of their claims from The Davis Sewing Machine Company to whom the Blue Bird Manufacturing Company had transferred its assets in exchange for capital stock of the transferee. An opinion, wherein the substantial allegations and prayers of the original bill of complaint are recited, was filed in this cause on July 19th last. 283 Fed. 436. Therein, upon a motion to dismiss the bill, it was held that Blue Bird Manufacturing Company was an indispensable party to the cause and that the bill should be dismissed for its nonjoinder. Thereupon the plaintiffs by leave of court amended their bill of complaint by joining the Blue Bird Manufacturing Company as a party defendant, by alleging that the assets transferred to the Davis Sewing Machine Company constituted *all* the assets of the Blue Bird Company, and that the Blue Bird Company has nothing against which the plaintiffs may seek recourse save the capital stock received by it from the Davis Sewing Machine Company. The prayers, as in the original bill, are that the Davis Sewing Machine Company be ordered to account as to the value and extent of the assets received by it from the Blue Bird Company, that the complainants and all other like creditors of the Blue Bird Company who may intervene may have judgment against the Davis Sewing Machine Company for the amounts of their respective claims, with interest, to the extent of the value of the assets received by the Davis Sewing Machine Company from the Blue Bird Company, and for general relief.

Motion to dismiss the amended bill of complaint has been filed by each defendant. The grounds of the present motions are that it appears from the bill that the plaintiffs are simple contract creditors, and not judgment creditors, of the Blue Bird Company, and that the bill of complaint fails to disclose grounds for equitable relief. The precise problems thus presented for solution are: (1) Whether, under the facts alleged, the plaintiffs have any standing in this court sitting in equity to obtain satisfaction of their claims from the Sewing Machine Company either by a decree holding the latter company personally liable therefor to any extent, or by the seizure of the transferred property and its application to the payment of their claims; (2) whether, apart from the fact that the plaintiffs are simple contract creditors of the Blue Bird Company, the bill of complaint discloses any liability, enforceable in equity, on the part of either the transferee or the transferred assets for the payment of the plaintiffs' claims; and (3) whether it appears from the bill that a plain, adequate, and complete remedy may not be had at law against the Blue Bird Company.

With respect to the first of the foregoing problems, it has been held by the Supreme Court in many cases that a simple contract creditor, having no interest in or lien upon the transferred property, cannot, in the absence of a trust in his favor, invoke the equitable jurisdiction of a federal court for his direct benefit. Scott v. Neely, 140 U. S. 106, 11 Sup. Ct. 712, 35 L. Ed. 358; Swan Land & Cattle Co. v. Frank, 148 U. S. 603, 13 Sup. Ct. 691, 37 L. Ed. 577; Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 977, 37 L. Ed. 804; Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113. (For brevity, these cases will be hereafter referred to as the Hollins group.) The plaintiffs, however, urge, as I understand their contentions: (1) That the Sewing Machine Company is a mere continuation of the Blue Bird Company, and so is directly liable to the plaintiffs; (2) that the Sewing Machine Company actually participated in the transfer to it of all the assets of the Blue Bird Company, and may be sued directly for the result of its active participation; (3) that the property transferred by the Blue Bird Company to the Sewing Machine Company was impressed with a trust for the payment of the creditors of the Blue Bird Company; and, lastly, that Case v. Beauregard, 101 U. S. 688, 25 L. Ed. 1004, cited with approval in Wyman v. Wallace, 201 U. S. 230, 26 Sup. Ct. 495, 50 L. Ed. 738, and Okmulgee Window Glass Co. v. Frink, 260 Fed. 159, 171 C. C. A. 195, in which a petition for certiorari was denied by the Supreme Court in 251 U. S. 563, 40 Sup. Ct. 342, 64 L. Ed. 415, either modify the principles of Hollins v. Brierfield Coal & Iron Co., supra, and the earlier cases therein cited, or recognize exceptions to those principles, within which exceptions this suit falls. These contentions of the plaintiffs will be considered in their order.

[1-5] Where one corporation sells or otherwise transfers all its assets to another company, the transferee is not as a general rule liable for the debts and liabilities of the transferor, in the absence of statutory provision therefor, statutory consolidation or merger, or express contract. E. E. Taenzer & Co. v. Chicago, R. I. & P. R. R. Co., 170 Fed. 240, 244, 95 C. C. A. 436 (C. C. A. 6); Fletcher, Cyclopedia Corporations, § 4751; 23 L. R. A. (N. S.) 1, 46, note. Obviously the foregoing rule is without application, where by amendment under a special act or general law of the charter of the debtor corporation there is but a mere change in the corporate name of the debtor, or a change in the corporate powers, for the identity of the debtor corporation is not thereby lost. In such instances the liabilities incurred before the change are in no way affected. Furthermore, a mere extension of the charter of a corporation before its expiration does not, unless such an intention appears, create a separate and distinct corporation, but only continues the existence of the old corporation. Fletcher, Cyclopedia Corporations, § 413. Likewise a legislative act may revive and continue a charter that has expired; but the question of identity—that is, whether such legislative act creates a new corporation or merely continues the existence of the old one—depends frequently upon construction. Miller v. English, 21 N. J. Law, 317, 324; Bellows v. Hallowell & Augusta Bank, Fed. Cas. No. 1,279.

The foregoing illustrations and cases indicate, in a measure, that

which is expressly held in Central Trust Co. v. Bridges, 57 Fed. 753, 6 C. C. A. 539 (C. C. A. 6), and in Armour v. E. Bement's Sons, 123 Fed. 56, 62 C. C. A. 142, namely, that in order to recover from a corporation of one name the obligations of a corporation of another name, upon the theory that the former is a mere continuation of the latter, it must appear that the former is the same legal entity as that whose obligation is sought to be charged upon it as one of its own; that is to say, it must be the same legal person, having a continued existence under a new name. Manifestly, where a defendant in a suit is the same legal entity as the debtor corporation, there is a personal and direct liability on the part of the defendant. In brief, the defendant is in such instances the debtor, and so of necessity may be held responsible in suits instituted (ordinarily at law, Okmulgee Window Glass Co. v. Frink, 260 Fed. 159, 166, 169, 171 C. C. A. 195; Armour v. E. Bement's Sons, 123 Fed. 56, 62 C. C. A. 142) against it by nonjudgment creditors. But if the defendant from whom recovery is sought is not the same legal entity as the debtor corporation, the theory of continuity of the corporation will not enable a nonjudgment creditor to maintain his suit against the transferee. The immediate question, therefore, is whether the allegations of the original bill (recited in the former opinion) and the amendment disclose that the Sewing Machine Company is the same legal person as the Blue Bird Company, having a continued existence under a new name. I think a perusal of the allegations is sufficient, without analysis, to show that it is not. It follows that the first contention of the plaintiffs cannot be sustained.

[6] The second contention of the plaintiffs presents little difficulty, for in Adler et al. v. Fenton et al., 24 How. 407, 413 (16 L. Ed. 696), it was expressly held by the Supreme Court that—

"In the absence of special legislation, we may safely affirm that a general creditor cannot bring an action on the case against his debtor, or against those combining and colluding with him to make dispositions of his property, although the object of those dispositions be to hinder, delay, and defraud creditors."

The same doctrine was laid down in Moran v. Dawes, Hopk. Ch. 365, 14 Am. Dec. 550, and in Lamb v. Stone, 11 Pick. 527. As creditors' bills are in the nature of proceedings in rem and not in personam (Cunningham v. City of Cleveland, 98 Fed. 657, 39 C. C. A. 211), are in essence "an equitable execution, comparable to proceedings supplementary to executions" (Pierce v. United States, 255 U. S. 398, 401, 402, 41 Sup. Ct. 365, 366, 65 L. Ed. 697); as the purpose of such suits is, in the case of a fraudulent transfer, to enable the creditor of the transferor to follow the property transferred, and as there is no personal liability on the part of the transferee unless the property transferred has been wasted, misapplied, or converted (Boyd v. Northern Pac. Ry. Co. [C. C.] 170 Fed. 779; Northern Pac. Ry. Co. v. Boyd, 177 Fed. 804, 101 C. C. A. 18; Id., 228 U. S. 482, 33 Sup. Ct. 554, 57 L. Ed. 931); and as a simple contract creditor, having no interest in or lien upon the transferred property, cannot, in the absence of a trust in his favor, invoke the equitable jurisdiction of a federal court for his direct benefit (Hollins group of cases), a general creditor is without any great-

er right in equity than he is at law to obtain a direct recovery from a transferee for the latter's active participation in a fraudulent transfer.

[7] The third contention of the plaintiffs is that the property transferred by the Blue Bird Company to the Sewing Machine Company was impressed with a trust for the payment of the creditors of the transferor. It is not alleged that any direct and express trust attached to the property. The theory of the plaintiffs underlying their present contention is that the assets of a corporation constitute a trust fund for the benefit of creditors, and that corporate creditors may, without exhausting legal processes or remedies, go into equity and enforce their claims. This proposition was asserted by simple contract creditors in Swan Land & Cattle Co. v. Frank and in Hollins v. Brierfield Coal & Iron Co., supra, but the Supreme Court, after thorough consideration, held it unsound.

Did the Supreme Court by citing Case v. Beauregard, 101 U. S. 688, 25 L. Ed. 1004, with approval in Wyman v. Wallace, 201 U. S. 230, 26 Sup. Ct. 495, 50 L. Ed. 738, and by denying a petition for certiorari in Okmulgee Window Glass Co. v. Frink, 260 Fed. 159, 171 C. C. A. 195 (251 U. S. 563, 40 Sup. Ct. 342, 64 L. Ed. 415), either so modify the doctrine of the Hollins group of cases or recognize such exceptions thereto as will permit the suit at bar to fall outside the principle of those cases? In Case v. Beauregard the court said:

"It is no doubt generally true that a creditors' bill to subject his debtor's interests in property to the payment of the debt must show that all remedy at law had been exhausted. And generally, it must be averred that judgment has been recovered for the debt; that execution has been issued, and that it has been returned nulla bona. The reason is that until such a showing is made, it does not appear, in most cases, that resort to a court of equity is necessary, or in other words, that the creditor is remediless at law. * * * But, after all, the judgment and fruitless execution are only evidence that his legal remedies have been exhausted, or that he is without remedy at law. They are not the only possible means of proof. The necessity of resort to a court of equity may be made otherwise to appear. Accordingly the rule, though general, is not without many exceptions. Neither law nor equity requires a meaningless form, 'Bona, sed impossibilia non cogit lex.' It has been decided that where it appears by the bill that the debtor is insolvent and that the issuing of an execution would be of no practical utility, the issue of an execution is not a necessary prerequisite to equitable interference [cases cited]. This is certainly true where the creditor has a lien or a trust in his favor.

"So it has been held that a creditor, without having first obtained a judgment at law, may come into a court of equity to set aside fraudulent conveyances of his debtor, made for the purpose of hindering and delaying creditors, and to subject the property to the payment of the debt due him [cases cited]. * * * The foundation upon which these and many other similar cases rest is that judgments and fruitless executions are not necessary to show that the creditor has no adequate legal remedy. When the debtor's estate is a mere equitable one, which cannot be reached by any proceeding at law, there is no reason for requiring attempts to reach it by legal processes. But, without pursuing this subject further, it may be said that whenever a creditor has a trust in his favor, or a lien upon property for the debt due him, he may go into equity without exhausting legal processes or remedies. Tappan v. Evans, 11 N. H. 311; Holt v. Bancroft, 30 Ala. 193. Indeed, in those cases in which it has been held that obtaining a judgment, and issuing an execution, is necessary before a court of equity can be asked to set aside fraudulent dispositions of a debtor's property, the reason given is that a general creditor has no lien."

In Cates v. Allen, 149 U. S. 451, 458, 13 Sup. Ct. 883, 884 (37 L. Ed. 804), the court observed:

"In Scott v. Neely, it was said by Mr. Justice Field (page 113), speaking for the court: 'In all cases where a court of equity interferes to aid the enforcement of a remedy at law, there must be an acknowledged debt, or one established by a judgment rendered, accompanied by a right to the appropriation of the property of the debtor for its payment, or, to speak with greater accuracy, there must be, in addition to such acknowledged or established debt, an interest in the property or a lien thereon created by contract or by some distinct legal proceeding [cases cited]. ✽ ✽ ✽ It is the existence, before the suit in equity is instituted, of a lien upon or interest in the property, created by contract or by contribution to its value by labor or material, or by judicial proceedings had, which distinguishes cases for the enforcement of such lien or interest from the case at bar.' The mere fact that a party is a creditor is not enough. He must be a creditor with a specific right or equity in the property; and this is the foundation of the jurisdiction in chancery, because jurisdiction on account of the alleged fraud of the debtor does not attach as against the immediate parties to the impugned transfer, except in aid of the legal right."

In Swan Land & Cattle Co. v. Frank, 148 U. S. 603, 13 Sup. Ct. 691, 37 L. Ed. 577, the questions arose on a demurrer to the bill of complaint which, after alleging a liability of three corporations to the plaintiff growing out of fraud and misrepresentations made in connection with the sale of their assets to the plaintiff, averred:

"That after the sale of their said properties to your orator, and the receipt by them of the purchase price, as aforesaid, said three vendors paid whatever liabilities they had outstanding, except their liability to your orator herein set forth, and distributed the money and stock obtained from your orator as the proceeds of said sale and all their other assets amongst their respective shareholders, and the same were received by said shareholders, and since that time said *three corporations have not, nor has either of them, made any use whatever of their franchises, but they have abandoned the same, and neither of said corporations has any officer or agent upon whom process can be served,* and they have not, nor has either of them, any assets of any kind out of which any judgment at common law against them, or either of them, could be satisfied."

The corporations had not, however, been dissolved. The defendants in the bill were the distributee stockholders. One of the grounds of demurrer assigned was that the bill did not state a case within the equity jurisdiction of the court, or one entitling the complainant to any discovery or equitable relief as prayed. With respect to this the court (148 U. S. at page 612, 13 Sup. Ct. 694, 37 L. Ed. 577) said:

"We are also clearly of opinion that the court below was correct in sustaining the demurrer to the bill upon the other ground assigned, that the complainant had not previously reduced its demand against the vendor corporations to judgment. That claim was purely legal, involving a trial at law before a jury. Until reduced to judgment at law, it could not be made the basis of relief in equity. This is well settled by the decisions of this court in Taylor v. Bowker, 111 U. S. 110, National Tube Works Co. v. Ballou, 146 U. S. 517, 523, and Scott v. Neely, 140 U. S. 106, 115. In this latter case the subject is fully reviewed and the question settled so far as the federal courts are concerned."

The extent to which the foregoing expressions indicate a departure from the language of Case v. Beauregard, above quoted, is, if possible,

made further apparent by the dissent of Mr. Justice Brown, who, in part, used these words:

"* * * I agree, too, that before resorting to the stockholders a judgment should, if possible, be obtained against the principal debtors, which in this case are the three Wyoming corporations. But the law does not compel that which is impossible, and if the facts alleged in the bill show that no judgment can be obtained against the corporations, and that it is useless to pursue them, the bare existence of such corporations ought not to defeat the recovery of a just claim."

In Hollins v. Brierfield Coal & Iron Co., 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113, the Supreme Court again reaffirmed the doctrine of Scott v. Neely, Cates v. Allen, and Swan Land & Cattle Co. v. Frank. It said (150 U. S. 378, 379, 14 Sup. Ct. 128, 37 L. Ed. 1113):

"The plaintiffs were simple contract creditors of the company, their claims had not been reduced to judgment, and they had no express lien by mortgage, trust deed, or otherwise. It is the settled law of this court that such creditors cannot come into a court of equity to obtain the seizure of the property of their debtor, and its application to the satisfaction of their claims, and this, notwithstanding a statute of the state may authorize such a proceeding in the courts of the state. The line of demarcation between equitable and legal remedies in the federal courts cannot be obliterated by state legislation. Scott v. Neely, 140 U. S. 106; Cates v. Allen, 149 U. S. 451. Nor is it otherwise in case the debtor is a corporation, and an unpaid stock subscription is sought to be reached. National Tube Works Company v. Ballou, 146 U. S. 517; Swan Land & Cattle Company v. Frank, 148 U. S. 603, 612."

What was the case of Wyman v. Wallace, 201 U. S. 230, 26 Sup. Ct. 495, 50 L. Ed. 738, and what was said therein with respect to Case v. Beauregard upon which may be predicated, successfully, the proposition that in that case the court modified the maturely considered principles of Scott v. Neely, Cates v. Allen, Swan Land & Cattle Co. v. Frank, and Hollins v. Brierfield Coal & Iron Co.? The nature of the case and the reference therein made to Case v. Beauregard are both disclosed by the following extract from the opinion of the court (201 U. S. 242, 26 Sup. Ct. 497, 50 L. Ed. 738):

"It is suggested that no judgment had been obtained upon the note prior to this suit in equity, but as one object of the suit was to subject to the satisfaction of the debt certain property conveyed to a trustee as security therefor, no judgment at law was a prerequisite. Day v. Washburn, 24 How. 352, Case v. Beauregard, 101 U. S. 688, 691, in which the court said: 'Without pursuing this subject further, it may be said that whenever a creditor has a trust in his favor, or a lien upon property for the debt due him, he may go into equity without exhausting legal processes or remedies.'"

As the Supreme Court in the Hollins group of cases did not question, but expressly acknowledged, the principle stated in that portion of the opinion in Case v. Beauregard quoted in Wyman v. Wallace, I must conclude that the last-mentioned case did not in any manner modify the doctrine of the Hollins group of cases.

Likewise I think the denial of the petition for a writ of certiorari in Okmulgee Window Glass Co. v. Frink, 260 Fed. 159, 171 C. C. A. 195 (251 U. S. 563, 40 Sup. Ct. 342, 64 L. Ed. 415), did not have any modifying effect upon the doctrine of those cases. That was a suit in equity by Frink against the Okmulgee Window Glass Company, as the alleged successor of the Coffeyville Window Glass Company,

to recover minimum patent royalties under a contract between the latter company and the plaintiff, who was not a judgment creditor of the Coffeyville Company. The Coffeyville Window Glass Company ceased to manufacture glass at Coffeyville on account of the failure of natural gas. It removed all of its property that could be removed advantageously to Okmulgee, Okl., where natural gas could be obtained. Its stockholders organized an Oklahoma corporation, the Okmulgee Company. The property of the Kansas corporation constituted the basis of capitalization for the Oklahoma corporation. The Kansas corporation was then dissolved. Some of the old stockholders sold all or a portion of their interest in the new corporation. Additional property was added, which was made the basis for an increase of stock. Shares of stock in the new corporation were to have been given, not to the old company, but to the latter's stockholders. The new company, however, subsequently refused to issue those shares. In the District Court Frink obtained a decree for $90,560, which was declared to be a lien upon the property and assets of the Okmulgee Company. Upon an appeal by the Okmulgee Company the Court of Appeals held that all the property belonging to the Coffeyville Company that came into the hands of the Okmulgee Company constituted a trust fund for the payment of the debts of the former, reversed the decree below, and directed that a decree in favor of Frink be entered for the sum of $19,410.86 and costs.

It is obvious that, if the decision of the Court of Appeals was in any way in conflict with the Hollins group of cases, the error was in holding that the property transferred by the Okmulgee Company to the Coffeyville Company constituted a trust fund for the payment of the debts of the latter company, and in permitting Frink, a nonjudgment creditor of that company, to maintain the suit against the Okmulgee Company. Yet it was Frink, in whose favor the above-mentioned rulings had been made, who presented the petition for certiorari to the Supreme Court, 251 U. S. 563, 40 Sup. Ct. 342, 64 L. Ed. 415. It must be presumed that his petition was not based upon the rulings in his favor. Consequently no inference of intended modification of the maturely considered and often repeated doctrine of the cases under examination may be drawn from the denial of the petition. But, apart from this, the mere denial of a petition for certiorari is not, I think, sufficient to support an inference that thereby the Supreme Court intended to depart from principles laid down by it in many cases after most exhaustive consideration. Furthermore, to be of service to the plaintiffs in the suit at bar, such departure would have to go to the extent, not only of reversing the decision in the group of cases under consideration, but even beyond the position taken in the dissenting opinion in Swan Land & Cattle Co. v. Frank. This is too violent a presumption to be indulged in.

Finally the plaintiffs cite Okmulgee Window Glass Co. v. Frink, 260 Fed. 159, 171 C. C. A. 195; Central of Georgia Ry. Co. v. Paul, 93 Fed. 878, 35 C. C. A. 639; Hibernia Ins. Co. v. St. Louis & New Orleans Transp. Co. (C. C.) 13 Fed. 516; Central Improvement Co. v. Cambria Steel Co., 210 Fed. 696, 127 C. C. A. 184; Philadelphia Rubber Works v. U. S. R. Reclaiming Works (D. C.) 276 Fed. 600, at

page 611; Silver King Coalition Mines Co. v. Silver King C. M. Co., 204 Fed. 166, 122 C. C. A. 402, Ann. Cas. 1918B, 571; Granite Brick Co. v. Titus, 226 Fed. 557, 572, 141 C. C. A. 313; Window Glass Mach. Co. v. New Bethlehem W. G. Co. (C. C. A.) 264 Fed. 822, Kentucky Wagon Mfg. Co. v. Jones & Hopkins Mfg. Co., 248 Fed. 272, 160 C. C. A. 350 and Bank of Commerce & Trusts v. McArthur, 256 Fed. 84, 167 C. C. A. 326, to show that the Circuit Courts of Appeals and District Courts have not understood the above-mentioned decisions of the Supreme Court to hold that nonjudgment creditors situated as are the plaintiffs may not come into a federal court of equity and obtain payment of their claims, either from the transferee or by the seizure and sale of the transferred property.

In the Okmulgee Case the debtor corporation had been dissolved. Here it has not been. In the Swan Land & Cattle Co. Case the court, in the first paragraph of the opinion, noted the fact that the corporations against which the plaintiff asserted a claim had not been dissolved. Mr. Justice Brown, dissenting, said:

"I do not understand it to be denied that, if the corporations had been formally dissolved by the decree of a competent court, the plaintiff might have maintained this bill, and the fact that it had no judgment against the corporations would be no defense."

In Terry v. Anderson, 95 U. S. 628, 24 L. Ed. 365, these observations were made:

"Ordinarily, a creditor must put his demand into judgment against his debtor, and exhaust his remedies at law before he can proceed in equity to subject choses in action to its payment. To this rule, however, there are some exceptions; and we are not prepared to say that a creditor of a dissolved corporation may not, under certain circumstances, claim to be exempted from its operation."

Possibly, therefore, the Okmulgee Case may be distinguished from the Supreme Court cases and the case at bar by reason of the fact that there the debtor corporation had been dissolved.

In Central of Georgia Ry. Co. v. Paul, 93 Fed. 878, 35 C. C. A. 639, the nonjudgment creditor was an intervener in proceedings involving foreclosure of a mortgage. The Supreme Court, in Hollins v. Brierfield Coal & Iron Co., 150 U. S. at page 379, 14 Sup. Ct. at page 128 (37 L. Ed. 1113), said:

"Doubtless in such foreclosure suit the simple contract creditor can intervene, and if he has any equities in respect to the property, whether prior or subsequent to those of the plaintiff, can secure their determination and protection."

The opinions in Hibernia Ins. Co. v. St. Louis & New Orleans Transp. Co. (C. C.) 13 Fed. 516, and Id. (C. C.) 10 Fed. 596, were handed down prior to the decisions of Cates v. Allen, Swan Land & Cattle Co. v. Frank, and Hollins v. Brierfield Coal & Iron Co. Central Improvement Co. v. Cambria Steel Co. merely holds, and on the authority of the Hollins Case, that a nonjudgment creditor may intervene and obtain relief in a foreclosure suit. In Philadelphia Rubber Works Co. v. U. S. R. Reclaiming Works the transferee had assumed the liabilities of its transferor. Silver King, Coalition Mines Co. v. Silver King C. M. Co. was a bill for an accounting against a transferee,

who had agreed to pay all the debts and obligations of the transferor. The court held such transferee to be primarily liable. Granite Brick Co. v. Titus recognized the doctrine of the Hollins Case, and, relying upon that case, held that the objection that the complainant was not a judgment creditor had been waived.

Window Glass Mach. Co. v. New Bethlehem W. G. Co. was an application by the plaintiff in and during the progress of an equity infringement suit for an injunction to restrain the defendant from a sale of its assets in proceedings for dissolution in accordance with the° laws of the state. The court of equity, having jurisdiction over the infringement suit, had jurisdiction to ascertain the amount of profits and damages due by the defendant to the plaintiff, and to compel payment thereof. Consequently, at the time of the application by the plaintiff for an injunction restraining defendant from selling its assets, the defendant was not entitled to a jury trial in the ascertainment of the profits and damages due by it to the plaintiff. The application for the injunction to restrain the sale was therefore in no sense an appeal to a court of equity to interfere in aid of a remedy at law. The case rests, apparently, on a different basis from that of Wiggins v. Armstrong, 2 Johns. Ch. 144, decided by Chancellor Kent, but resembles somewhat Moran v. Dawes, Hopk. Ch. 365, 14 Am. Dec. 550. So far as I can see, it is without application to the case at bar.

Kentucky Wagon Mfg. Co. v. Jones & Hopkins Mfg. Co. involved the misapplication of assets turned over by the debtors to a committee for liquidation and distribution among creditors. The plaintiff thereby became a beneficiary under an express trust.

In Bank of Commerce & Trusts v. McArthur, a suit instituted in the Southern district of Florida, the plaintiff had exhausted the legal remedies available to it. It had recovered judgments against the debtors in the only jurisdiction in which process could be served upon them. Because of the absence of McArthur from Florida, that not being the state of his residence, an action at law on the judgments obtained against him in North Carolina could not be maintained in Florida as service of process could not be had. The court said:

"Where a creditor invokes the aid of a court of equity to set aside transfers by the debtor of his property in fraud of the creditor, and to subject transferred property in which the debtor no longer has any beneficial interest, and shows that it is impossible to obtain a judgment at law against the debtor within the jurisdiction where the suit in equity is brought, nothing more is required to show that the creditor has no plain, adequate, and complete remedy at law. A creditor so situated is entitled to resort to a court of equity."

But it must be remembered that a judgment had been obtained in another state against McArthur; that in National Tube Works Co. v. Ballou, 146 U. S. 517, 13 Sup. Ct. 165, 36 L. Ed. 1070, the suit was instituted in the Circuit Court of the United States for the Southern District of New York, and that the Supreme Court said:

"The bill in the present case is defective in that respect. It alleges only the recovery of a judgment against the corporation in Connecticut, and the issuing and return there of an execution unsatisfied. It does not allege any judgment in New York or any effort to obtain one, nor does it aver that it is impossible to obtain one. It alleges merely that the corporation has no fund or assets wherewith to pay the claim of the plaintiff. Where it is sought

by equitable process to reach equitable interests of a debtor, the bill, unless otherwise provided by statute, must set forth a judgment in the jurisdiction where the suit in equity is brought, the issuing of an execution thereon, and its return unsatisfied, or must make allegations showing that it is impossible to obtain such a judgment in any court within such jurisdiction."

It must be further remembered that in the case at bar the Blue Bird Company is a Delaware corporation, capable of being sued, and a defendant in this suit and that the bill of complaint does not allege that a judgment against it has been obtained by the plaintiff here or elsewhere.

[8, 9] I think the foregoing cases do not modify in any degree the principle that a general creditor having no interest in or lien upon the transferred property cannot, in the absence of a trust in his favor, invoke the equitable jurisdiction of a federal court to set aside transfers by the debtor of his property in fraud of the creditor, or to obtain the seizure of such property and its application to the satisfaction of his claim, or to obtain other relief for his direct benefit against the transferee. I am of the opinion that the bill of complaint does not take the plaintiffs without that rule, and that consequently the first ground assigned for the dismissal of the bill is well taken.

[10] The next question presented by the motion to dismiss is whether, apart from the foregoing conclusion that the complainants are without right to maintain this suit, the bill of complaint discloses any liability on the part of either the transferee or the transferred property for the payment of the debts of the Blue Bird Company. If liability is shown, it arises from the bare allegations that the Sewing Machine Company received all the assets of the Blue Bird Company of a value of $2,000,000 in exchange for shares of capital stock of the Sewing Machine Company having a par value of approximately $2,000,000, that the Blue Bird Company has nothing save such stock against which the plaintiffs may seek recourse, and the further allegation that the shares of stock so issued to the Blue Bird Company "were and are in truth and fact no consideration at all." When a corporation receives in good faith a transfer of all the assets of another corporation, and pays to the selling corporation full consideration therefor, the transfer is not fraudulent as against the unsecured creditors of the selling corporation and they cannot subject the property in the hands of the transferee to the payment of their claims or sue to set aside the transfer. Drovers' & Mechanics' Nat. Bank v. First Nat. Bank, 260 Fed. 9, 171 C. C. A. 45, 10 A. L. R. 495; Warfield v. Marshall County Canning Co:, 72 Iowa, 666, 34 N. W. 467, 2 Am. St. Rep. 263; Fletcher, Cyclopedia Corporations, § 4754.

Some courts have held, however, that where the property of one corporation is taken by another corporation without compensation, other than the issuance to the seller of capital stock of the acquiring company, the latter is liable for debts of the former, at least in an amount equal to the value of the transferred property. Many of these cases are cited in Fletcher, Cyclopedia Corporations, § 4756, notes. Other courts have held in effect that the fact that only shares of the capital stock of the purchasing corporation are received by the selling corporation in return for its assets is not of itself sufficient to

make the purchasing corporation liable for the debts of the seller. Cooper v. Utah, etc., Ry. Co., 35 Utah, 570, 591, 102 Pac. 202, 136 Am. St. Rep. 1075; Swing v. Empire Lumber Co., 105 Minn. 356, 117 N. W. 467; Homestead Min. Co. v. Reynolds, 30 Colo. 330, 70 Pac. 422.

In view of the laws of the state of Delaware and the allegations of the bill, I think this case falls within the principle of the latter cases. Here the Sewing Machine Company, the purchaser, and the Blue Bird Company, the seller, of the property involved in this case, are both Delaware corporations. There are no allegations in the bill showing that it was beyond the powers of the Blue Bird Company to sell in good faith all its assets, which so far as the bill discloses may have been wholly intangible assets. The Constitution and statutes of the state of Delaware authorized the Sewing Machine Company, a Delaware corporation, to issue its capital stock, not only for money paid and labor done, but also for personal property, or real estate or leases thereof, actually acquired by such corporation. Constitution of the State of Delaware, article 9, § 3; section 1928, Rev. Code of Del. 1915. Under these constitutional and statutory provisions it seems obvious that the transfer of its assets by the Blue Bird Company for capital stock of the Sewing Machine Company is not of itself evidence that the transaction was in any sense fraudulent. Yet the bill of complaint is barren of other allegations that even tend to raise a presumption of fraud, unless it be the averment that the shares of stock "were and are in truth and fact no consideration at all." This averment is, however, not one of fact but is a conclusion that is contradicted by the only allegation of fact pertaining to the financial status of the Sewing Machine Company, namely, that it acquired property of the value of $2,000,000 and issued therefor shares of capital stock having a par value of approximately the same amount. I am of the opinion that the bill of complaint fails to show any liability on the part of either the Sewing Machine Company or the property in its hands for the payment of the debts of the Blue Bird Company.

[11] The remaining question presented by the motion to dismiss is whether it appears from the bill that a plain, adequate, and complete remedy at law may not be had by the complainants. The Blue Bird Company is a Delaware corporation, capable of being sued. In fact, it is a party defendant to this bill of complaint, and has appeared. The shares of capital stock of the Sewing Machine Company owned by the Blue Bird Company may be seized and sold to satisfy any judgment at law that may be obtained against the latter company. Rev. Code Del. 1915, § 2009. There is no allegation of fact in the bill of complaint showing that the claims of the plaintiffs against the Blue Bird Company could not be satisfied by such procedure at law.

The motion to dismiss the bill must be granted.